**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 26-42401-169 |
| TEGETHOFF DEVELOPMENT, LLC, *et al.*, | ) | Chapter 11 |
| | ) | Jointly Administered |
| Debtors. | ) | Hon. Brian Walsh |
| | ) | |

**OBJECTION OF PRESERVE AT SYCAMORE, LLC TO DEBTORS' SUPPLEMENTAL MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING (I) TEGETHOFF DEVELOPMENT LLC THE USE OF CASH COLLATERAL PURSAUNT TO § 363 OF THE BANKRUPTCY CODE AND (II) SETTING FINAL HEARING FOR USE OF CASH COLLATERAL**

Comes now Preserve at Sycamore, LLC ("Sycamore") and respectfully states as follows as and for its objection to the Debtors' above-referenced motion (the "Cash Collateral Motion," ECF 68). This objection is supported by the Declaration of Luke Ross, attached hereto as **Exhibit A** and incorporated herein by reference.

**INTRODUCTION AND SYCAMORE'S STANDING**

1. While serving as Sycamore's manager,[1] non-debtor insider Jeff Tegethoff siphoned millions of dollars from Sycamore. Sycamore's investigation into the precise dates, amounts, and destinations of the transfers is ongoing. It is clear even from the Debtors' June 2026 monthly operating report (ECF 123, p. 15) that $115,000.00 of the transferred funds entered the Restricted Account.[2] More recently, Jeff Tegethoff on July 6, 2026 transferred $45,000.00 from Sycamore to the Restricted Account.[3] These transfers were not authorized by Sycamore nor were they made for Sycamore's benefit.

[1] Jeff Tegethoff is no longer manager of Sycamore.

[2] As defined in the Cash Collateral Motion, the "Restricted Account" is that deposit account in which the Cash Collateral is held.

[3] The proposed Cash Collateral budget (ECF 68-6) identified that a $45,000.00 "development fee" would be deposited into the Restricted Account from Sycamore. It appears that "development fee" is the excuse for the transfer. Among

2. The funds Jeff Tegethoff transferred from Sycamore to the Restricted Account (among others) are held in constructive trust for Sycamore. *See, e.g.*, *Chiu v. Wong*, 16 F.3d 306, 310 (8th Cir. 1994) (recognizing the state law dictates whether property is held in constructive trust and that section 541(d) of the Bankruptcy Code limits the extent to which such property becomes estate property); *Swon v. Huddleston*, 282 S.W.2d 18, 25-26 (Mo. 1955) (identifying bases for imposition of constructive trust under Missouri law). Alternatively, they are held in trust under the Missouri Limited Liability Act and related authorities, which provide that the manager of an LLC holds "as trustee for [the company] any profit or benefit derived [by the manager] . . . from any personal use by such person of the property of the limited liability company." Mo. Rev. Stat. § 347.088. *See also, e.g.*, *DeBold v. Case (In re Tri-River Trading, LLC)*, 329 B.R. 252, 264-65 (8th Cir. B.A.P. 2005) (*ultra vires* acts by LLC manager are void *ab initio* under Missouri law); *Schieve v. Meyer*, 628 S.W.3d 726, 730-31, 735 (Mo. App. W.D. 2021), citing *Tri-River* (LLC manager who stole money from LLC held "funds as a trustee").

3. Thus, not only is Sycamore a creditor of the Debtors, it also claims a specific interest in the Cash Collateral. Sycamore therefore has standing to object to the Cash Collateral Motion.[4]

**BASES FOR OBJECTION**

4. There are three chief bases on which Sycamore objects to the relief requested in the Cash Collateral Motion: Sycamore does not consent to use of its funds, the proposed expenses are unnecessary and excessive, and the projected revenues are unsupported and unrealistic.

---

the problems with that transfer is that Tegethoff himself swore that the development fee was fully-paid in 2025, as further discussed below. This was an unauthorized transfer, plain and simple.

[4] For the avoidance of doubt, Sycamore submits that it would have standing to object even if it was nothing more than a general unsecured creditor.

5. ***First***, Sycamore's money comprises the alleged Cash Collateral, at least in part. Sycamore does not consent to its money being used to fund speculative investments directed by a known fraudster.[5] Accordingly, in addition to other prohibitions on funds held in constructive trust, Section 363(c) and (e) foreclose the Debtors' use of the alleged Cash Collateral unless and until Sycamore's interest is adequately protected.

6. ***Second***, the proposed expenses are both unnecessary and excessive.

a. The budget proposes to pay Tegethoff and his spouse $107,120.00 per month. No explanation has been given why the same services cannot be provided by others for less; at most, the Debtors advance that Tegethoff's knowledge of the business necessitates his involvement.[6] Not to belabor the point: it is Tegethoff who got the Debtors into their current position, he is unreliable and dishonest, and as the Debtors themselves concede there is a genuine risk that he will be imprisoned. Paying the Tegethoffs extravagant salaries is neither necessary nor warranted.

b. The budget proposes to pay Tegethoff's personal tax liabilities to the tune of $130,000.00 per month, demonstrating that Tegethoff continues to use his control of the Debtors to seek to continue using money in the Restricted Account to pay for his personal lifestyle and expenses. The expense is not necessary, warranted, or permitted. At a minimum, the Court should require some evidence beyond Tegethoff's own say-so that this expense is a valid

---

[5] Reference is made to the Solera Entities' objection, ECF 37, including in particular ¶¶ 1, 2, 3, and 6 thereof.

[6] The Debtors do not even bother offering an explanation why Mrs. Tegethoff's involvement is necessary or desirable. She served as the pre-petition "Director of Philanthropy" but now will "be handling the draw administration and accounting and the related third-party coordination"—tasks that could be handled perfectly well by an independent temporary worker instead of *the one person who cannot be compelled to testify against Mr. Tegethoff*. (ECF 66, ¶¶ 36, 39).

exercise of the Debtors' business judgment. If it is the Debtors' contention that it is common and appropriate for businesses to pay the IRS $130,000.00 per month to keep their chief executive out of prison—without requiring repayment, no less—some expert opinion testimony is in order.

c. The budget proposes $880,000.00 of expenditures on pre-acquisition due diligence. At no point does it identify what those expenditures are or who will receive them. What is more, the Debtors do not support that the proposed expenditures will be accretive to the Estates—the budget itself states that those funds "will convert to equity upon closing," but nowhere do the Debtors estimate the value of that equity, how or when its value can be realized for creditors, or even the Debtors' contemplated share of the equity of those projects. And substantially the same problems arise with the Debtors' proposal to expend "earnest money" and to acquire properties.

7. ***Third***, the Debtors' revenue projections are unsupported and patently unrealistic.

a. The problems with the Debtors' projected revenues have already begun. While the Debtors represented their entitlement to (and took) a $45,000.00 "developer fee" from Sycamore this month, they never supported their entitlement to it and, in fact, they were not entitled to it.[7] On October 14, 2025, Tegethoff swore in writing that there was no balance due on the development fee. A true and correct copy of that statement is attached as **Exhibit B**.

b. Likewise, the projected revenues include sales of illiquid assets, including an interest in Sycamore. But the Debtors offer no support that these illiquid assets

[7] Tellingly, the Debtors' Schedule G does not identify a development agreement with Sycamore.

can be sold at all, much less on the timeline or in the amounts identified on the budget. As one obvious example, the budget projects realization of $1.25 million from a July sale of the Sycamore interest, but no motion has been made to sell that interest and the time to do so to complete a transaction in July has expired.

8. The Solera Entities and the Lakeport Entities also have made persuasive objections to granting the Cash Collateral Motion. Sycamore joins in those objections.

## CONCLUSION

9. In sum and substance, the Debtors seek authority to use Cash Collateral to fund the lavish lifestyles of insiders, pay insiders' pre-petition tax obligations, and run their businesses with no meaningful oversight or transparency into how Cash Collateral is used. To make matters worse, they already have demonstrated that their budget relies, at least in part, on continuing to steal money from Sycamore. The Cash Collateral Motion should be denied.

Respectfully submitted,

BECK & SANT LLC

/s/ *J. Talbot Sant, Jr.*
J. Talbot Sant, Jr., #35324MO
11775 Borman Drive, Ste. 216
Maryland Heights, Missouri 63146
(636) 240-3632/Fax: (636) 240 - 6803
Email: tal@beckandsantlaw.com
*Special Counsel to Preserve at Sycamore, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 27, 2026, the foregoing document was filed electronically with the Clerk of Court, which caused a copy of same to be delivered by email via the ECF system to all parties receiving such notices, with notice of case activity generated.

/s/ *J. Talbot Sant, Jr.*

Exhibit A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 26-42401-169 |
| TEGETHOFF DEVELOPMENT, LLC, *et al.*, | ) | Chapter 11 |
| | ) | Jointly Administered |
| Debtors. | ) | Hon. Brian Walsh |
| | ) | |

**DECLARATION OF LUKE ROSS IN SUPPORT OF PRESERVE AT SYCAMORE, LLC'S OBJECTION TO DEBTORS' SUPPLEMENTAL MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING (I) TEGETHOFF DEVELOPMENT LLC THE USE OF CASH COLLATERAL PURSAUNT TO § 363 OF THE BANKRUPTCY CODE AND (II) SETTING FINAL HEARING FOR USE OF CASH COLLATERAL**

Comes now Luke Ross and respectfully states and avers as follows in support of the above-captioned Objection (the "Objection"). Capitalized terms not defined herein have the meanings ascribed to them in the Objection.

1. My name is Luke Ross. I am an adult resident of the State of Kansas. I am of sound mind and, except as may be noted otherwise, I have personal knowledge of the facts set forth in this declaration and I could and would testify to them if called to do so.

2. I am the Chief Operating Officer of Canvas Wealth Advisors LLC, the managing member of Canvas Sycamore Creek, LLC ("Canvas"). Canvas is the majority-owner of Sycamore.

3. Until his recent removal, Jeff Tegethoff was Sycamore's manager. Tegethoff Development is a minority member of Sycamore.

4. As part of my duties, I have undertaken to trace funds Jeff Tegethoff has shuttled between accounts he owns or controls (or owned and controlled), including funds he transferred from Sycamore to the Restricted Account. My review to date, which is not complete, has identified

transfers from Sycamore to accounts owned or controlled by Jeff Tegethoff totaling over $3 million.

5. In addition to the transfers from Sycamore to the Restricted Account shown on the Debtors' June 2026 monthly operating report, Jeff Tegethoff on July 6, 2026—shortly before his removal as manager—transferred $45,000.00 from Sycamore to the Restricted Account.

6. None of the transfers described in this declaration from Sycamore to the Restricted Account was authorized, nor were any made for the benefit of Sycamore.

7. There is no unpaid development agreement between Sycamore and any of the Debtors. Sycamore had fully paid the development agreement by no later than October 14, 2025. The Tegethoff-signed sworn statement attached to the Objection as Exhibit B is a true and correct copy of the document as delivered to us by Tegethoff, and it includes his sworn admission that the development agreement was fully-paid by no later than October 14, 2025.

8. I have reviewed the Objection and I believe the facts advanced therein to be true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: July 27, 2026

/s/ Luke Ross
Luke Ross
Chief Operating Officer
Canvas Wealth Advisors LLC

Exhibit B

HARD AND SOFT COST REQUISITION

SWORN OWNER'S STMT: The Preserve at Sycamore Creek LLC
PROJECT: The Preserve at Sycamore Creek
DRAW NO. #32

The undersigned, Jeff Tegethoff, being duly sworn on oath, certifies that he is the managing member of The Preserve at Sycamore Creek LLC which is the owner of the following described premises in Osage Beach, MO to wit:

1. That he is thoroughly familiar with all facts and circumstances concerning the premises described above:
2. That with respect to improvements on the premises the only work done or materials furnished to date are as listed below:
3. That the only contracts let for the furnishing of future work or materials relative to the contemplated improvements are listed below:
4. That this statement is a true and complete statement of all such contracts and costs, previous payments and balances due if any.

| Item Description | Scheduled Value (Budget) | Prior Changes | Changes This Period | Revised Value (Budget) | Previous Applications | This Application | Total Completed and Drawn to Date Amount | % | Balance to Finish Including Retainage |
|---|---|---|---|---|---|---|---|---|---|
| **Land Acquistion Costs:** | | | | | | | | | |
| Land Acquisition | 2,705,521.62 | 0.00 | 0.00 | 2,705,521.62 | 2,705,521.62 | 0.00 | 2,705,521.62 | 100.00% | 0.00 |
| SUBTOTAL: | 2,705,521.62 | 0.00 | 0.00 | 2,705,521.62 | 2,705,521.82 | 0.00 | 2,705,521.82 | 100.00% | 0.00 |
| **Soft Costs:** | | | | | | | | | |
| Developer Fee | 2,000,000.00 | (500,000.00) | 0.00 | 1,500,000.00 | 1,500,000.00 | 0.00 | 1,500,000.00 | 100.00% | 0.00 |
| Development Contingency | 1,281,848.46 | (1,137,893.00) | (71,077.95) | 72,877.51 | 0.00 | 0.00 | 0.00 | 0.00% | 72,877.51 |
| Architect / Engineering / Consulting | 1,081,027.57 | 191,683.55 | 7,808.85 | 1,280,519.97 | 1,272,711.13 | 7,808.85 | 1,280,519.98 | 100.00% | (0.00) |
| Owner Direct / IT / FFE | 1,006,531.00 | 1,446,349.73 | 0.00 | 2,452,880.73 | 2,452,880.73 | 0.00 | 2,452,880.73 | 100.00% | 0.00 |
| Title / Draw / Other 3rd Party | 140,350.00 | 33,853.00 | 0.00 | 174,203.00 | 174,203.00 | 0.00 | 174,203.00 | 100.00% | 0.00 |
| Construction Soft Costs | 1,738,840.85 | (108,532.00) | 0.00 | 1,630,308.85 | 1,630,308.85 | 0.00 | 1,630,308.85 | 100.00% | 0.00 |
| Operating Reserve | 500,000.00 | 56,420.19 | 0.00 | 556,420.19 | 556,420.19 | 0.00 | 556,420.19 | 100.00% | 0.00 |
| Construction Loan Interest | 2,798,425.00 | 1,000,000.00 | 0.00 | 3,798,425.00 | 1,787,731.24 | 190,853.72 | 1,978,584.96 | 52.09% | 1,819,840.04 |
| Construction Loan Fees | 199,000.00 | 5,827.50 | 0.00 | 204,827.50 | 204,827.50 | 0.00 | 204,827.50 | 100.00% | 0.00 |
| SUBTOTAL: | 10,746,022.88 | 987,708.97 | (63,269.10) | 11,670,462.75 | 9,579,082.64 | 198,662.57 | 9,777,745.21 | 83.78% | 1,892,717.55 |
| **Hard Costs:** | | | | | | | | | |
| Kolb Sitework Contract | 3,544,572.50 | 587,371.07 | 0.00 | 4,131,943.57 | 4,131,943.57 | 0.00 | 4,131,943.57 | 100.00% | 0.00 |
| Thomas Construction Company Contract | 45,903,883.00 | (1,015,080.04) | 63,269.10 | 44,952,072.06 | 40,809,450.80 | 576,578.36 | 41,386,029.16 | 92.07% | 3,566,042.90 |
| SUBTOTAL | 49,446,455.50 | (427,708.97) | 63,269.10 | 49,084,015.63 | 44,941,394.37 | 576,578.36 | 45,517,972.73 | 92.73% | 3,566,042.90 |
| **TOTAL** | **62,900,000.00** | **560,000.00** | **0.00** | **63,460,000.00** | **57,225,998.63** | **775,240.93** | **58,001,239.56** | **91.40%** | **5,458,760.45** |
| **Sources:** | | | | | | | | | |
| Construction Loan | 39,800,000.00 | 0.00 | 0.00 | 39,800,000.00 | 33,585,998.63 | 775,240.93 | 34,341,239.56 | 86.28% | 5,458,760.44 |
| Member Loan | 0.00 | 105,000.00 | 0.00 | 105,000.00 | 105,000.00 | 0.00 | 105,000.00 | 100.00% | 0.00 |
| Equity | 23,100,000.00 | 455,000.00 | 0.00 | 23,555,000.00 | 23,555,000.00 | 0.00 | 23,555,000.00 | 100.00% | 0.00 |
| **TOTAL** | **62,900,000.00** | **560,000.00** | **0.00** | **63,460,000.00** | **57,225,998.63** | **775,240.93** | **58,001,239.56** | **91.40%** | **5,458,760.45** |
| Differences | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00% | 0.00 |

THE UNDERSIGNED HEREBY APPROVES THE ABOVE AMOUNTS FOR PAYMENT:

SUBSCRIBED AND SWORN TO ME THIS 14 DAY OF October, 2025.
STATE OF Indiana
COUNTY OF Marion

NOTARY PUBLIC SEAL INDIANA
ADAM YOHLER
Notary Public, State of Indiana
Hamilton County
Commission Number NP0741945
My Commission Expires
June 21, 2030

G:\russide\hdscan7.xls

The Preserve at Sycamore Creek
October 14, 2025

| SOS Category | SOS TOTAL |
|---|---|
| Land Acquisition | $ - |
| Developer Fee | - |
| Development Contingency | - |
| Architecture / Engineering / Consulting | 7,808.85 |
| Owner Direct / IT / FFE | - |
| Title / Draw / Other 3rd Party | - |
| Construction Soft Costs | - |
| Operating Reserve | - |
| Construction Loan Interest | 190,853.72 |
| Construction Loan Fees | - |
| Kolb Site Work Contract | - |
| Thomas Construction Contract | 576,578.36 |
| Member Loan | - |
| Total | $ 775,240.93 |

| Vendor | Invoice Reference | Invoice Date | Description | Category | Amount |
|---|---|---|---|---|---|
| Cobalt Construction Consulting, LLC | 22-003-40 | 9/30/2025 | Construction Management - September 2025 | Architecture / Engineering / Consulting | $ 7,293.60 |
| Husch Blackwell | 3807950 | 9/11/2025 | Legal Services - August 2025 | Architecture / Engineering / Consulting | 515.25 |
| Thomas Construction Company | App 36 | 9/30/2025 | Construction - App 36 | Thomas Construction Contract | 576,578.36 |
| UMB Bank | Int Stmt 9.24.25 | 9/24/2025 | Construction Loan Interest - Through 9.24.25 | Construction Loan Interest | 190,853.72 |
| | | | | | $ 775,240.93 |