# Exhibit A

**Plan**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **In re:**<br>**TEGETHOFF DEVELOPMENT, LLC,**<br>**TEGETHOFF DEVELOPMENT CO, LLC,**<br>**AND PEARL CAPITAL MANAGEMENT LLC,**[1]<br>Debtors. | **Case No. 26-42401-357**<br>Hon. Brian C. Walsh<br>Chapter 11 Proceeding<br>(Jointly Administered) |

**PLAN OF LIQUIDATION**

[1] The Debtors in the above-captioned, jointly administered chapter 11 case, along with the last four digits of each Debtor's federal taxpayer-identification number are (i) Tegethoff Development, LLC (2787); (ii) Tegethoff Development Co, LLC (2441), Case No. 26-42402; and (iii) Pearl Capital Management, LLC (5045), Case No. 26-42403.

# TABLE OF CONTENTS

INTRODUCTION ........ 1

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME AND DEFINED TERMS ........ 2

A. Rules of Interpretation; Computation of Time ........ 2

B. Defined Terms ........ 2

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS ........ 11

A. Administrative Claims ........ 11

1. General Administrative Claims ........ 11

2. Professional Fee Claims ........ 11

3. Statutory Fees ........ 12

B. Priority Tax Claims ........ 12

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ........ 13

A. Summary ........ 13

B. Separate Plans; Debtor-Specific Classes, Voting, and Distributions ........ 13

C. Classification and Treatment of Claims ........ 13

1. Class 1 — Other Priority Claims ........ 13

2. Class 2 — Other Secured Claims ........ 14

3. Class 3 — UMB Secured Claim ........ 14

4. Class 4 – Bank of Washington Secured Claim ........ 15

5. Class 5 – Clark Trust Secured Claim ........ 15

6. Class 6 – Star Bank Secured Claim ........ 16

7. Class 7 — General Unsecured Claims ........ 16

8. Class 8 — Equity Interests ........ 17

D. Elimination of Vacant Classes ........ 17

ARTICLE IV. ACCEPTANCE OR REJECTION OF THIS PLAN ..... 17

A. Acceptance or Rejection of this Plan ..... 17

1. Presumed Acceptance of Plan ..... 17

2. Voting Classes ..... 17

3. Deemed Rejection of this Plan ..... 18

B. Nonconsensual Confirmation ..... 18

C. Subordinated Claims ..... 18

ARTICLE V. MEANS FOR IMPLEMENTATION OF THIS PLAN ..... 18

A. Appointment of the Plan Administrator ..... 18

B. No Substantive Consolidation of the Estates ..... 18

C. Transactions Effective as of the Effective Date ..... 19

D. Uses of Cash ..... 20

E. Plan Administrator ..... 20

1. Appointment ..... 20

2. Powers and Authority ..... 20

3. Indemnification ..... 22

4. Compensation and Retention of Professionals ..... 22

5. Resignation, Removal, and Successor ..... 22

6. Reports; Books and Records ..... 22

F. The Plan Administration Assets ..... 23

G. Corporate Action ..... 23

H. Exemption From Transfer Taxes and Fees. ..... 23

I. Directors, Managers, and Officers of the Debtor ..... 24

J. Insurance Policies ..... 24

K. Subpoena Power and Cooperation of Jeffrey Tegethoff ..... 24

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..... 25

A. Rejection of Executory Contracts and Unexpired Leases ..... 25

B. Preexisting Obligations Under Executory Contracts and Unexpired Leases ..... 25

C. Assumption of the D&O Policies ..... 25

D. Rejection Damages Claims ..... 25

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS ..... 26

A. Timing and Calculation of Amounts to Be Distributed; Entitlement to Distributions ..... 26

1. Timing and Calculation of Amounts to Be Distributed and Date of Distributions ..... 26

2. Entitlement to Distributions ..... 26

B. Plan Administrator ..... 26

C. Distributions on Account of Disputed Claims Allowed After the Effective Date ..... 27

D. Delivery of Distributions and Undeliverable or Unclaimed Distributions ..... 27

1. Delivery of Distributions in General ..... 27

2. Undeliverable Distributions and Unclaimed Property ..... 27

3. Record Date for Distributions ..... 27

4. Fractional Distributions ..... 28

5. De Minimis Distributions ..... 28

E. Compliance with Tax Requirement; Allocations ..... 28

F. Claims Paid or Payable by Third Parties ..... 28

1. Claims Paid by Third Parties ..... 28

2. Claims Payable by Third Parties ..... 29

3. Applicability of Insurance Policies ..... 29

4. Guaranty Claims Supported by Nondebtor Collateral ..... 29

G. Allocation of Plan Distributions between Principal and Interest .......... 31

ARTICLE VIII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS .......... 31

A. Allowance and Disallowance of Claims .......... 31

B. Prosecution of Objections to Claims .......... 31

C. Estimation of Claims .......... 31

D. Distributions After Allowance .......... 32

E. Disallowance of Certain Claims .......... 32

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THIS PLAN .......... 32

A. Conditions Precedent to Confirmation .......... 32

B. Conditions Precedent to the Effective Date .......... 32

C. Waiver of Conditions .......... 33

D. Effect of Non-Occurrence of Conditions to Confirmation or Consummation .......... 33

E. Substantial Consummation .......... 33

ARTICLE X. RELEASES AND Continuation of the Automatic Stay and Injunction .......... 33

A. No Releases and No Stay of Litigation Against Jeffrey Tegethoff or Other Nondebtors .......... 33

B. No Discharge .......... 33

C. Continuation of the Automatic Stay as a Post-Effective Date Injunction .......... 34

D. Preservation of All Causes of Action Not Expressly Settled or Released .......... 34

ARTICLE XI. RETENTION OF JURISDICTION .......... 34

ARTICLE XII. MISCELLANEOUS PROVISIONS .......... 36

A. Reservation of Rights .......... 36

B. No Government Releases .......... 36

C. Payment of Statutory Fees .......... 36

D. Modification of Plan ... 37

E. Revocation or Withdrawal of Plan ... 37

F. Successors and Assigns ... 37

G. Severability ... 37

H. Service of Documents ... 38

I. Governing Law ... 38

J. Exhibits and Supplements ... 39

K. Conflicts ... 39

L. Entire Agreement ... 39

M. 2002 Notice Parties ... 39

# PLAN OF LIQUIDATION

## INTRODUCTION[2]

Lakeport Hotel GP LLC, Lakeport Hotel LLC, Lakeport Village LLC, Oasis at Lakeport LLC, Oasis at Lakeport 1 LLC, and Big T LLC (collectively, the "**Lakeport Entities**"), XRL ALC, LLC ("**XRL**"), Preserve at Sycamore, LLC ("**Sycamore**") Creditors Solera Pearl, LLC, Solera Expo, LLC, Aspen Investment Group, LLC, Solera Multifamily, LLC, and Hickory Investors, LLC (collectively, "**Solera**") (collectively, the "**Moving Creditors**") hereby propose the attached Chapter 11 Plan of Liquidation for Debtors Tegethoff Development, LLC ("**TD Debtor**"), Tegethoff Development Co., LLC, ("**TD Co Debtor**") and Pearl Capital Management ("Pearl Debtor" and collectively with the TD Debtor and the TD Co. Debtor, the "**Debtors**") as debtors and debtors-in-possession in this Chapter 11 Cases under sections 1107 and 1108 of the Bankruptcy Code, in the above captioned jointly administered bankruptcy cases ("**Chapter 11 Cases**"), hereby propose the following Chapter 11 Plan of Liquidation pursuant to section 1121 of the Bankruptcy Code. Reference is made to the Disclosure Statement for risk factors and a summary and analysis of the Plan and certain related matters. The Moving Creditors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. The Plan provides for: (i) liquidation of the Estates Assets and implementation and oversight the distribution of the proceeds therefrom, including prosecution of Causes of Action by an independent estate fiduciary; and (ii) the appointment of a Plan Administrator to manage and control all of the Debtors' and Estates assets, including any causes of action, and among other things, make Distributions in accordance with the terms of this Plan, wind up the Debtors' Estates, and administer and liquidate all property of the Debtors, including the Retained Causes of Action.

The Moving Creditors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, results of operations, and historical financial information, and for a summary and analysis of this Plan, the treatment of Claims provided for herein and certain related matters. There also are other agreements and documents, which will be filed with the Bankruptcy Court, that are referenced in this Plan or the Disclosure Statement as Exhibits and Plan Schedules. All such Exhibits and Plan Schedules are incorporated into and are a part of this Plan as if set forth in full herein. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019 and the terms and conditions set forth in this Plan, the Moving Creditors the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation.

The Moving Creditors have the right to file this Plan pursuant to Bankruptcy Code section 1121(c)(2) as the Debtors have not timely filed a plan within their exclusivity period.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.**

---

[2] Capitalized terms used, but not otherwise defined in this Introduction, have the meanings assigned below.

# ARTICLE I.

# RULES OF INTERPRETATION, COMPUTATION OF TIME AND DEFINED TERMS

## A. *Rules of Interpretation; Computation of Time*

For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, will include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender will include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced item will be substantially in that form or substantially on those terms and conditions; (c) except as otherwise provided herein, any reference herein to a contract, lease, instrument, release, or other agreement or document will mean as it may be amended, modified or supplemented from time to time; (d) any reference to an Entity as a Holder of a Claim or an Interest includes that Entity's successors and assigns; (e) unless otherwise specified, all references herein to "Articles," "Sections," "Exhibits" and "Plan Supplements" are references to Articles, Sections, Exhibits and Plan Supplements hereof or hereto; (f) unless otherwise stated, the words "herein," "hereof," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, indenture, or other agreement or document entered into in connection with this Plan and except as expressly provided herein, the rights and obligations arising pursuant to this Plan will be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (i) the rules of construction set forth in section 102 of the Bankruptcy Code will apply to this Plan; (j) references to a specific article, section, or subsection of any statute, rule, or regulation expressly referenced herein will, unless otherwise specified, include any amendments to or successor provisions of such article, section, or subsection; (k) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules will have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (l) references to "shareholders," "directors," and/or "officers" will also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; and (m) all references to statutes, regulations, orders, rules of courts, and the like will mean as amended from time to time, and as applicable to the Chapter 11 Case, unless otherwise stated.

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) will apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to this Plan will occur on a day that is not a Business Day (as defined below), then such transaction will instead occur on the next succeeding Business Day.

## B. *Defined Terms*

Unless the context otherwise requires, the following terms will have the following meanings when used in capitalized form herein:

"*Administrative Claim*" means any Claim entitled to administrative expense priority under sections 503(b), 507(a)(2), or 507(b) of the Bankruptcy Code, other than a Professional Fee Claim or Statutory Fee, including any actual and necessary cost or expense incurred on or after the Petition Date and through the Effective Date in preserving an Estate or operating a Debtor's business and any Claim under section 503(b)(9) of the Bankruptcy Code.

"*Administrative Claims Bar Date*" means the Business Day that is thirty (30) days after the Effective Date, which shall be the deadline for filing requests for payment of Administrative Claims, except as otherwise provided in this Plan or the Confirmation Order.

"*Administrative Claims Objection Deadline*" means the Business Day that is twenty-one (21) days after the Administrative Claims Bar Date; provided that such deadline may be extended by order of the Bankruptcy Court or by written agreement between the Plan Administrator and the applicable Holder.

"*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

"*Allowed*" means, with respect to a Claim: (i) any Claim as to which no objection to allowance has been interposed (either in the Bankruptcy Court or in the ordinary course of business) on or before the applicable time period fixed by applicable non-bankruptcy law or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order, to the extent such objection is determined in favor of the respective Holder; (ii) any Claim as to which the liability of the Debtor and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court; or (iii) any Claim expressly deemed Allowed by this Plan. A Claim that is Allowed shall include a Claim that is Disputed to the extent such Claim becomes Allowed after the Effective Date. A Claim that is Allowed shall not, for purposes of Distributions under this Plan, include interest on such Claim accruing from or after the Petition Date. Any Claim that constitutes an Assumed Liability shall not be an Allowed Claim against the Debtor for purposes of this Plan and the Holder of any Claim that constitutes an Assumed Liability shall not be entitled to any Distribution on account of such Claim.

"*Assets*" means any and all property and/or rights of each Debtor and each Estate, whether tangible or intangible, known or unknown, and wherever located, including Cash, contract rights, rights to payment, books and records, privileges to the extent transferable under applicable law, membership interests, rights under operating or development agreements, Executory Contracts, Unexpired Leases, Causes of Action, Avoidance Actions, insurance rights, and all proceeds of the foregoing; provided that Assets of one Debtor shall not be deemed Assets of another Debtor solely by reason of joint administration.

"*Avoidance Action*" means any avoidance, recovery, preservation, or subordination claim or cause of action, arising under sections 502(d), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code or applicable law.

"*Ballot*" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of this Plan in accordance with this Plan and the procedures governing the solicitation

process, and which must be actually received by the Balloting Agent on or before the Voting Deadline.

"*Bank of Washington Secured Claim*" means that Secured Claim of the Bank of Washington solely against the TD Debtor asserted in substantially all assets of the TD Debtor.

"*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*., as amended from time to time, as applicable to the Chapter 11 Case.

*"Bankruptcy Court"* means the United States Bankruptcy Court for the Eastern District of Missouri and, to the extent of any reference under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Chapter 11 Case under section 151 of title 28 of the United States Code.

"*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Case.

"*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

"*Cash*" means the legal tender of the United States of America or the equivalent thereof.

"*Cash Collateral*" has the meaning set forth in the Cash Collateral Order.

*"Cash Collateral Order*" means each interim or final order entered by the Bankruptcy Court authorizing the use of Cash Collateral, including the *Corrected Interim Order Authorizing Limited use of Cash Collateral and Granting Adequate Protection* [Docket No. 79], the *Second Interim Order Authorizing Cash Collateral and Granting Adequate Protection* [Docket No. 99], the *Third Interim Order Authorizing Use of Cash Collateral and Granting Adequate Protection* [ Docket No. 140], and the *Fourth Interim Order Authorizing Use of Cash Collateral and Granting Adequate Protection* [Docket No. 181].

*"Causes of Action"* means any action, Claim, Avoidance Action, cause of action, controversy, demand, right, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, Disputed or undisputed, Secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law; *provided* that Causes of Action shall not include any causes of action released .

*"Chapter 11* Cases" means the above-captioned chapter 11 cases of the Debtors, jointly administered under Case No. 26-42401-357.

"*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code, against any Debtor or any Estate, whether or not asserted or Allowed.

*"Claims Bar Date"* means (i) the likely date of November 15, 2026 (subject to finalization and approval in the Claims Bar Date Order as defined below) which was the general deadline for filing Proofs of Claim for any Claims against the Debtors that arose prior to the Petition Date (other than Claims held by Governmental Units); and (ii) November 30, 2026, which was the deadline for Governmental Units to file Proofs of Claim against the Debtors, in each case as set pursuant to the Claims Bar Date Order.

*"Claims Bar Date Order"* means the to be entered order of the Bankruptcy Court setting the applicable claims bar date for non-governmental claimants in this case.

"*Claims Objection Deadline*" means the date that is one hundred eighty (180) days after the Effective Date, as such date may be extended by order of the Bankruptcy Court upon motion of the Plan Administrator.

"*Claims Register*" means the official register of Claims maintained by the Court.

"*Class*" means a category of Holders of Claims or Interests as set forth in Article III hereof pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

"*Clark Trust Secured Claim*" means that Secured Claim of the Clark solely against the TD Debtor asserted solely in the Clark Trust Collateral (as defined in the Disclosure Statement).

*"Confirmation"* means entry of the Confirmation Order, subject to all conditions specified in Article IX.A hereof having been: (a) satisfied; or (b) waived pursuant to Article IX.C of this Plan.

"*Confirmation Date*" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

"*Confirmation Hearing*" means the hearing to be held by the Bankruptcy Court regarding Confirmation of this Plan.

*"Confirmation Order"* means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, supplemented, or modified in accordance with applicable law.

"*Consummation*" means the occurrence of the Effective Date of this Plan.

*"D&O Policies"* means all directors and officers liability insurance policies (including any "tail policy") issued or providing coverage at any time to any of the Debtors, any of their predecessors, and/or any of their current or former subsidiaries (if any) for current or former directors', managers', and officers' liability and all agreements, documents, or instruments relating thereto.

"*Disallowed*" means, with respect to any Claim or portion thereof, any Claim against any Debtor which: (i) has been disallowed, in whole or part, by a Final Order; (ii) has been withdrawn by agreement of the Holder thereof and the Plan Administrator in whole or in part; (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) if listed in the Schedules as zero or as

Disputed, contingent or unliquidated and in respect of which a Proof of Claim, as applicable, has not been timely filed or deemed timely filed pursuant to this Plan, the Bankruptcy Code or any Final Order or other applicable law; (v) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the filed amount of any Proof of Claim or proof of Interest; and (vi) is not listed in the Schedules and as to which no Proof of Claim or request for payment of an Administrative Expense Claim has been timely filed or deemed timely filed with the Bankruptcy Court. In each case a Disallowed Claim is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

"*Disclosure Statement*" means the *Disclosure Statement for the Plan of Liquidation*, dated October [●], 2026, as the same may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto.

"*Disclosure Statement Order*" means the order of the Bankruptcy Court approving the Disclosure Statement and the procedures for soliciting and tabulating votes on the Plan.

*"Disputed"* means, with respect to a Claim or Interest, any Claim or Interest or portion thereof as to which the Plan Administrator or party in interest has timely filed an objection, request for estimation, or other pleading, in accordance with any applicable Bankruptcy Rule or Bankruptcy Code section, contesting allowance, classification, priority, secured status, or amount, and which dispute has not been resolved by settlement or Final Order.

*"Distribution"* means a distribution made or facilitated by the Plan Administrator pursuant to this Plan.

"*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims are eligible to receive Distributions under this Plan.

*"Effective Date"* means the first Business Day on which all conditions specified in Article IX.B have been satisfied or waived pursuant to and in accordance with Article IX.C.

"*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

"*Estate*" means the estate created for each of the Debtors in the Chapter 11 Cases pursuant to sections 301 and 541 of the Bankruptcy Code upon the commencement of each of the Chapter 11 Cases.

"*Estates*" shall mean each Estate of each Debtor collectively.

"*Executory Contract*" means a contract or lease to which a Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

"*Exhibit*" means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement (as such exhibits are amended, modified or otherwise supplemented from time to time).

"*Equity Interests*" means any equity or ownership interests (including, without limitation, any limited-liability company interests) in the Debtors.

"*Final Order*" means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired; *provided*, *however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

"*General Unsecured Claim*" means any Unsecured Claim against a Debtor that is not: (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) an Administrative Claim; (c) a Priority Tax Claim; (d) an Other Secured Claim; (e) an Other Priority Claim; (f) a Professional Fee Claim; (g) Plan Administration Expense; or (h) the UMB Secured Claim.

"*Guaranty Claim*" means any Claim against a Debtor arising from or relating to such Debtor's guaranty, suretyship, indemnity, or other secondary liability with respect to a Primary Obligation.

"*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

"*Holder*" means any Person or Entity that is the owner of record of a Claim or an Interest, as applicable.

"*Impaired*" means, with respect to a Claim or Interest, or Class of Claims or Interests, a Claim or Class that is "impaired" within the meaning of section 1124 of the Bankruptcy Code.

"*Insurance Policies*" means all insurance policies and related agreements issued or providing coverage at any time to a Debtor and all agreements, documents, or instruments relating thereto, including any D&O Policies.

"*Insurer*" means any non-Debtor company or other Entity that issued or entered into an Insurance Policy (including any third party administrator) and any respective predecessors and/or affiliates thereof.

"*Interests*" means Equity Interests.

"*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

"*Net Distributable Assets*" means with respect to each Estate, Cash and other Assets available for Distribution after payment of, or establishment of reserves for, Claims and expenses entitled to priority over General Unsecured Claims.

"*Nondebtor Collateral*" means property securing a Primary Obligation in which no Debtor or Estate is in title to such property.

"*Nondebtor Collateral Provider*" means any Entity other than a Debtor that owns, has granted, or is alleged to have granted a Lien or other security interest in Nondebtor Collateral securing a Primary Obligation, whether or not such Entity is also a Nondebtor Underlying Obligor.

"*Nondebtor Recovery*" means any Cash, property, proceeds, distribution, settlement payment, insurance or surety payment, foreclosure proceeds, credit bid, deficiency credit, or other consideration actually received by or irrevocably credited to the Holder of a Guaranty Claim on account of the corresponding Primary Obligation from: (i) a Nondebtor Underlying Obligor; (ii) Nondebtor Collateral; (iii) another guarantor, surety, or codebtor; (iv) an insurer; or (v) any bankruptcy, insolvency, receivership, foreclosure, or similar proceeding. A Nondebtor Recovery shall be valued in the amount by which it reduces the Primary Obligation under the governing agreements, applicable law, or a Final Order. The unliquidated, appraised, or estimated value of Nondebtor Collateral shall not constitute a Nondebtor Recovery unless and until such value has been actually realized or irrevocably credited against the Primary Obligation.

**"***Nondebtor Underlying Obligor***"** means, with respect to any Guaranty Claim, each Entity other than a Debtor whose payment or performance obligations under the applicable agreement constitute the corresponding Primary Obligation and are guaranteed, in whole or in part, by a Debtor. Without limiting the foregoing, the term includes any borrower, maker, issuer, lessee, purchaser, account debtor, co-obligor, or other Entity directly liable on the Primary Obligation, and any successor or assignee that has assumed such obligations. The term does not include an Entity solely because such Entity:

(a) is a guarantor, surety, indemnitor, or other secondary obligor; or

(b) owns or has pledged Nondebtor Collateral,

unless such Entity is also directly liable on the Primary Obligation. The use of this defined term shall not constitute an admission concerning the validity, enforceability, priority, amount, or allowance of any Primary Obligation or Guaranty Claim.

"*Other Priority Claim*" means any Claim against a Debtor entitled to priority in payment as specified in section 507(a)(4), (5), (6), (7) or (9) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

"*Other Secured Claim*" means any Secured Claim against a Debtor other than the UMB Secured Claim, the Bank of Washington Secured Claim, the Clark Trust Secured Claim and the Star Bank Secured Claim.

"*Outstanding Guaranteed Amount*" means, at any time, the amount, not exceeding the Allowed amount of the applicable Guaranty Claim, for which the Debtor remains liable under the applicable guaranty after giving effect, in accordance with the guaranty and applicable law, to all Nondebtor Recoveries.

"*Person*" means a person as defined in section 101(41) of the Bankruptcy Code.

"*Petition Date*" means June 1, 2026.

"*Plan Administrator*" means Matt McKinlay of Ampleo, solely in his capacity as the plan administrator appointed under this Plan, and any successor appointed in accordance with this Plan and the Confirmation Order.

*"Plan Administration Assets"* means, with respect to each Post-Effective Date Debtor, all Assets vesting in or retained by that Post-Effective Date Debtor on the Effective Date and all proceeds thereof.

"*Plan Administration Expenses*" means all reasonable and documented fees, expenses, and costs incurred by the Plan Administrator and any professionals or agents retained by the Plan Administrator in connection with administering the Post-Effective Date Debtors, the Plan, reconciling Claims, liquidating Assets, prosecuting or resolving Causes of Actions, making Distributions, and closing the Chapter 11 Cases.

*"Plan Supplement"* means, collectively, the compilation of documents, forms, exhibits, attachments, schedules, agreements, and instruments referred to therein, ancillary or otherwise, including, without limitation, any Exhibits, all of which are incorporated by reference into, and are an integral part of this Plan, as all may be amended, supplemented, or modified in accordance with this Plan. The Plan Supplement (or substantially final forms thereof) shall be filed by the deadline established in the Disclosure Statement Order or another order of the Bankruptcy Court.

"*Post-Effective Date Debtors*" means the Debtors after the Effective Date.

"*Primary Obligation*" means the indebtedness or other obligation of a Nondebtor Underlying Obligor that is the subject of a Guaranty Claim.

"*Priority Tax Claim*" means any Secured or Unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

*"Pro Rata Share"* means, with respect to any Distribution on account of an Allowed Claim, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in the same Class against that Debtor that are entitled to participate in such Distribution.

*"Professional Fee Claim"* means a Claim of a Professional Person for professional services, including legal, financial, investment banking, advisory, accounting, and other services rendered or reimbursement of expenses incurred on or after the Petition Date through the Effective Date in the Chapter 11 Cases.

*"Professional Persons"* means any Person or Entity retained by order of the Bankruptcy Court in connection with the Chapter 11 Cases pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code, excluding: (i) any ordinary-course professional retained pursuant to an order of the Bankruptcy Court; and (ii) any Person or Entity retained by order of the Bankruptcy Court whose compensation for services rendered is, in accordance with the order

retaining such Person or Entity, to be paid by a Person or Entity other than the Debtors or their Estates.

"*Proof of Claim*" means a proof of Claim filed against a Debtor or Debtors in the Chapter 11 Cases.

"*Retained Causes of Action*" means all Causes of Action that are not expressly released, waived, settled, or transferred by this Plan, the Confirmation Order, or another Final Order, including the Causes of Action described in the nonexclusive schedule filed with the Plan Supplement.

*"Schedules"* means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as amended or supplemented.

"*Secured*" means, when referring to a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code; (b) otherwise Allowed pursuant to this Plan as a Secured Claim.

"*Secured Claim*" means a Claim that is Secured.

"*Solicitation*" means the solicitation of votes on this Plan.

" *Star Bank Secured Claim*" means that Secured Claim of Star Bank solely against the Pearl Debtor asserted in various assets related to the Helen Louise Apartments, L.P.

*"Statutory Fees"* means all fees and charges assessed against the Estates under section 1930 of chapter 123 of title 28 of the United States Code.

*"U.S. Trustee"* means the Office of the United States Trustee for Region 13, as applicable to the Eastern District of Missouri.

"*UMB Secured Claim*" shall mean the Secured Claim of UMB Bank against Debtor Tegethoff Development, LLC solely in the Restricted Account (as such term is defined in the Cash Collateral Orders).

"*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

"*Unimpaired*" means, with respect to a Claim, or Class of Claims, not "impaired" within the meaning of section 1123(a)(4) and 1124 of the Bankruptcy Code.

"*Unsecured Claim*" means any Claim that is not a Secured Claim.

"*Voting Deadline*" means [●]. (Prevailing Central Time).

*"Wind-Down"* means the process of winding down the Debtors' business and Estates, objecting to and reconciling Claims, making Distributions and winding down and dissolving the Debtor and all actions related to, necessary for, or otherwise appropriate to effectuate the foregoing.

## ARTICLE II.

## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III.

### A. *Administrative Claims*

1. General Administrative Claims

Except (a) with respect to Professional Fee Claims and Statutory Fees, and (b) to the extent that a Holder of an Allowed Administrative Claim and the Debtor agree to less favorable treatment for such Holder's Allowed Administrative Claim, each Holder of an Allowed Administrative Claim shall be paid in full in Cash by the Plan Administrator from the Assets of the Debtor against which such Claim is Allowed on, or as soon as reasonably practicable after, the latest of: (a) the Effective Date; (b) the date such Administrative Claim becomes Allowed; and (c) the date such Allowed Administrative Claim becomes due and payable.

Except as otherwise provided in this Plan, the Confirmation Order, or section 503(b)(1)(D) of the Bankruptcy Code, each request for payment of an Administrative Claim that has not previously been filed or paid must be filed with the Bankruptcy Court and served on the Plan Administrator no later than the Administrative Claims Bar Date. Any required request not timely filed and served shall be forever barred, estopped, and enjoined from assertion against the Debtors, the Estates, the Post-Effective Date Debtors, the Plan Administration Assets, and the Plan Administrator, as applicable. This requirement and deadline do not apply to Statutory Fees, Professional Fee Claims, or alter any deadline previously established for filing administrative expense claims arising under section 503(b)(9) of the Bankruptcy Code.

Objections to requests for payment of Administrative Claims must be filed and served on the Plan Administrator and the requesting party by the Administrative Claims Objection Deadline. All creditors and parties in interest, including the Plan Administrator, maintain standing after the Effective Date to object to Administrative Claims.

2. Professional Fee Claims

All Professional Persons seeking allowance of Professional Fee Claims shall: (i) file final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days after the Effective Date, unless another deadline is fixed by the Bankruptcy Court and shall be paid, pursuant to the terms of the Plan, in such amounts as

are Allowed by the Bankruptcy Court on the date upon which the applicable order relating to any such Allowed Professional Fee Claim is entered, or (ii) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Professional Fee Claim and the Plan Administrator. As set forth in this Plan, any undisputed fees and expenses incurred after the Effective Date by professionals retained by the Plan Administrator shall be considered Plan Administration Expenses and shall be paid by the Plan Administrator after approval by the Bankruptcy Court in a Final Order.

Objections to any final applications for payment of Professional Fee Claims must be filed no later than sixty (60) days from the date of the filing of such final requests for payment of Professional Fee Claims, provided such date may be extended by Order of the Bankruptcy Court or agreement between the applicable Professional Fee Claimant and applicable party in interest. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders. All creditors and parties in interest maintain standing after the Effective Date to object to Professional Fee Claims or to Plan Administration Expenses.

3. Statutory Fees

All Statutory Fees due and payable prior to the Effective Date shall be paid by the applicable Debtor on or before the Effective Date. After the Effective Date, the Plan Administrator shall timely pay any Statutory Fees for each Chapter 11 Case until such case is closed, dismissed, or converted. Notwithstanding anything to the contrary herein, the U.S. Trustee shall not be required to file a Proof of Claim or any other request for payment of Statutory Fees.

**B. *Priority Tax Claims***

Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtor agree to less favorable treatment for such Holder’s Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will, in full satisfaction, settlement, and release of and in exchange for such Allowed Priority Tax Claim, either be (1) paid in full in Cash by the Plan Administrator on, or as soon as reasonably practicable after, the latest of: (a) the Effective Date; Date, (b) the date such Priority Tax Claim becomes Allowed, and (c) the date such Allowed Priority Tax Claim becomes due and payable; or (2) paid in Cash by the Plan Administrator in installment payments of a total value, as of the Effective Date, equal to the Allowed amount of such Claim, over a period of time not to exceed five (5) years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.

For the avoidance of doubt, no Priority Tax Claims for which Jeffery Tegethoff has individual liability shall be Allowed Priority Tax Claims. Moving Creditors are unaware of any Priority Tax Claims against a Debtor.

# ARTICLE III.

# CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

## A. *Summary*

Pursuant to sections 1122 and 1123 of the Bankruptcy Code, the following Classes designate Claims against and Interests in each Debtor. A Claim or Interest is classified only to the extent it qualifies within a particular Class and may be classified in more than one Class to the extent applicable. A Claim is entitled to a Distribution only to the extent that the Claim or Interest qualifies within the description of that Class and is Allowed, remains unpaid, and has not otherwise been satisfied or released. A Class with no Allowed Claim, Claim temporarily allowed for voting under Bankruptcy Rule 3018, or Interest shall not exist for voting or Confirmation purposes.

## B. *Separate Plans; Debtor-Specific Classes, Voting, and Distributions*

This Plan constitutes a separate plan for each Debtor. Each numbered Class is deemed separately constituted for each Debtor, voting shall be tabulated by Debtor, and the requirements of section 1129 of the Bankruptcy Code shall be satisfied separately for each Debtor, unless the Bankruptcy Court orders otherwise. Joint administration shall not pool Assets, Claims, votes, or Distributions.

**Summary of Classification and Treatment of Claims**

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1. | Other Priority Claims | Unimpaired | Presumed to Accept |
| 2. | Other Secured Claims | Unimpaired | Presumed to Accept |
| 3. | UMB Secured Claim | Unimpaired | Presumed to Accept |
| 4. | Bank of Washington Secured Claim | Unimpaired | Presumed to Accept |
| 5. | Clark Trust Secured Claim | Unimpaired | Presumed to Accept |
| 6. | Star Bank Secured Claim | Unimpaired | Presumed to Accept |
| 7 | General Unsecured Claims | Impaired | Entitled to Vote |
| 8. | Equity Interests | Impaired | Deemed to Reject |

## C. *Classification and Treatment of Claims*

1. Class 1 — Other Priority Claims

(a) *Classification*: Class 1 consists of all Other Priority Claims.

(b) *Treatment:* On the Effective Date or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Other Priority Claim and the Plan Administrator agree to less favorable treatment, each Allowed Other Priority Claim shall be paid in full in Cash by the Plan Administrator, in full satisfaction and release of each Allowed Other Priority Claim.

(c) *Voting*: Class 1 is Unimpaired under the Plan. Holders of Other Priority Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

2. Class 2 — Other Secured Claims

(a) *Classification*: Class 2 consists of all Other Secured Claims.

(b) *Treatment:* On the Effective Date or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Other Secured Claim and the Plan Administrator agree to less favorable treatment, in full satisfaction and release of each Allowed Other Secured Claim, each Allowed Other Secured Claim shall, at the Plan Administrator's election, receive one of the following from the applicable Debtor: (i) payment in full in Cash by the Plan Administrator in an amount equal to the value of the Secured Claim; (ii) return of the collateral securing such Allowed Other Secured Claim; or (iii) other treatment that renders the Claim Unimpaired. For the avoidance of doubt, each applicable Lien shall remain in place until the treatment selected under this Section is completed. Any Allowed deficiency Claim shall be treated as a General Unsecured Claim against the applicable Debtor.

(c) *Voting*: Class 2 is Unimpaired under the Plan. Holders of Other Secured Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

3. Class 3 — UMB Secured Claim

(a) *Classification*: Class 3 consists of the UMB Secured Claim.

(b) *Treatment:* On the Effective Date or as soon as reasonably practicable thereafter, except to the extent that UMB and the Plan Administrator agree to less favorable treatment, in full satisfaction and release of the Allowed UMB Secured Claim, UMB at the option of the Administrator (i) shall be paid in full in Cash by the Plan Administrator in an amount equal to the value of the collateral securing such Allowed UMB Secured Claim, (ii) receive the collateral securing its Allowed UMB Secured Claim, or (iii) receive any other treatment that would render such claim Unimpaired. UMB will retain its Lien in the Restricted Account of the TD Debtor,

provided, pursuant to UMB's agreement in the Cash Collateral Orders, UMB has agreed for use of its cash collateral up to $2 million dollars, on a reducing basis for every dollar spent in the Cash Collateral Orders. Approximately $1.4 million of that availability remains as of filing of this Plan. The Plan Administrator may use up to $750,000.00 of remaining availability to fund distributions on the Allowed Professional Fees, Allowed Administrative Expenses, Statutory Fees, Allowed Priority Tax Claims, and Allowed Other Priority Claims and Plan Administration Expenses. To the extent Allowed UMB Secured Claim is satisfied or UMB releases its security interest in the TD Debtor's account, the remainder of those funds may be used for Plan Administration Expenses or Distributions to Class 7.

(c) *Voting:* Class 3 is Unimpaired under the Plan. UMB is presumed to have accepted Plan pursuant to section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

4. Class 4 – Bank of Washington Secured Claim

(a) *Classification:* Class 4 consists of the Bank of Washington Secured Claim.

(b) *Treatment*: On the Effective Date or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Bank of Washington Secured Claim and the Plan Administrator agree to less favorable treatment, in full satisfaction and release of each Allowed Bank of Washington Secured Claim, each Allowed Bank of Washington Secured Claim shall, at the Plan Administrator's election, receive one of the following from the applicable Debtor: (i) payment in full in Cash by the Plan Administrator in an amount equal to the value of the Secured Claim; (ii) return of the collateral securing such Allowed Other Secured Claim; or (iii) other treatment that renders the Claim Unimpaired. For the avoidance of doubt, each applicable Lien shall remain in place until the treatment selected under this Section is completed. Any Allowed deficiency Claim shall be treated as a General Unsecured Claim against the applicable Debtor.

(c) *Voting*: Class 4 is Unimpaired under the Plan. Holders of the Bank of Washington Claim are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

5. Class 5 – Clark Trust Secured Claim

(a) *Classification:* Class 5 consists of the Clark Trust Secured Claim.

(b) *Treatment*: On the Effective Date or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Clark Trust Secured Claim and the Plan Administrator agree to less favorable treatment, in full satisfaction and release of each Allowed Clark Trust Secured Claim, each Allowed Clark Trust Secured Claim shall, at the Plan Administrator's

election, receive one of the following from the applicable Debtor: (i) payment in full in Cash by the Plan Administrator in an amount equal to the value of the Secured Claim; (ii) return of the collateral securing such Allowed Clark Trust Secured Claim; or (iii) other treatment that renders the Claim Unimpaired. For the avoidance of doubt, each applicable Lien shall remain in place until the treatment selected under this Section is completed. Any Allowed deficiency Claim shall be treated as a General Unsecured Claim against the applicable Debtor. Provided, that if any portion of the Clark Collateral or its proceeds are paid to the Allowed Bank of Washington Secured Claim and there is no remaining proceeds, the remainder of the Allowed Clark Secured Claim shall be treated as General Unsecured Claim.

(c) *Voting*: Class 5 is Unimpaired under the Plan. Holders of the Clark Trust Secured Claim are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

6. Class 6 – Star Bank Secured Claim

(a) *Classification:* Class 6 consists of the Star Bank Secured Claim.

(b) *Treatment*: On the Effective Date or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Star Bank Secured Claim and the Plan Administrator agree to less favorable treatment, in full satisfaction and release of each Allowed Star Bank Secured Claim, each Allowed Star Bank Secured Claim shall, at the Plan Administrator's election, receive one of the following from the applicable Debtor: (i) payment in full in Cash by the Plan Administrator in an amount equal to the value of the Secured Claim; (ii) return of the collateral securing such Allowed Star Bank Secured Claim; or (iii) other treatment that renders the Claim Unimpaired. For the avoidance of doubt, each applicable Lien shall remain in place until the treatment selected under this Section is completed. Any Allowed deficiency Claim shall be treated as a General Unsecured Claim against the applicable Debtor.

(c) *Voting*: Class 6 is Unimpaired under the Plan. Holders of the Star Bank Secured Claim are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

7. Class 7 — General Unsecured Claims

(a) *Classification*: Class 7 consists of all General Unsecured Claims.

(b) *Treatment:* Each Holder of an Allowed General Unsecured Claim against a Debtor shall be entitled to receive from the Plan Administrator its Pro Rata Share of the Net Distributable Assets of the respective Debtor available after payment or reserve for Plan Administration Expenses. For the avoidance of

doubt, no Holder of an Allowed General Unsecured Claim shall receive a Distribution from Assets of another Debtor solely by reason of joint administration, and aggregate recoveries on Claims based on the same obligation shall not exceed the Allowed amount of that obligation.

(c) *Voting*: Class 7 is Impaired under the Plan. Holders of General Unsecured Claims are entitled to vote on the Plan and shall receive Ballots.

8. Class 8 — Equity Interests

(a) *Classification*: Class 8 consists of all Equity Interests.

(b) *Treatment:* On the Effective Date, all Equity Interests shall be cancelled, released and extinguished, and no Holder of an Equity Interest shall receive or retain any Distribution, property, or other value on account of such Equity Interest.

(c) *Voting*: Class 8 is Impaired under the Plan. Holders of Equity Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Equity Interests are not entitled to vote to accept or reject the Plan.

### D. *Elimination of Vacant Classes*

Any Class of Claims or Interests that is not occupied as of the commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018, or as to which no vote is cast, shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE IV.

## ACCEPTANCE OR REJECTION OF THIS PLAN

### A. *Acceptance or Rejection of this Plan*

1. Presumed Acceptance of Plan

Claims in Classes 1, 2, 3, 4, 5, and 6 are Unimpaired under this Plan, and, therefore, Holders of such Claims are presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Claims in Classes 1, 2, 3, 4, 5, and 6 are not entitled to vote on this Plan and the votes of such Holders shall not be solicited.

2. Voting Classes

Claims in Class 7 are Impaired under this Plan, and Holders of Allowed Class 7 Claims are entitled to vote to accept or reject this Plan with respect to each applicable Debtor.

3. Deemed Rejection of this Plan

Equity Interests in Class 8 are Impaired under the Plan, and the Holders of such Equity Interests shall not receive any Distributions nor retain any property on account of such Interests and therefore are deemed to reject this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Class 8 Equity Interests are not entitled to vote on this Plan and votes of such Holders shall not be solicited.

**B. *Nonconsensual Confirmation***

Section 1129(a)(10) of the Bankruptcy Code must be satisfied separately for purposes of Confirmation by acceptance of this Plan by an Impaired Class of Claims. The Moving Creditors may seek Confirmation pursuant to Bankruptcy Code section 1129(b) with respect to any rejecting Class of Claims or Interests.

**C. *Subordinated Claims***

The allowance, classification, treatment, and Distributions (if any) of Claims shall take into account and conform to the relative priority and rights of the Claims in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, except where otherwise provided herein, the Plan Administrator reserves the right to seek reclassification or subordination of any Claim in accordance with any such contractual, legal, or equitable subordination rights relating thereto.

## ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THIS PLAN

**A. *Appointment of the Plan Administrator***

A majority of creditors in these Chapter 11 Cases have sought the appointment of a Chapter 11 Trustee. The reasons for the appointment are laid out in detail in the pleadings filed in this case and include substantial and continuing allegations of misappropriation and commingling of various project funds. On the Effective Date, the Plan Administrator shall be appointed under this Plan and the Confirmation Order as the authorized representative of each Post-Effective Date Debtor and Estate for the purposes described herein. Any appointment of a chapter 11 trustee before Confirmation remains governed by Bankruptcy Code section 1104.

**B. *No Substantive Consolidation of the Estates***

The Plan Administrator would be appointed as a Plan Administrator for each of the Debtors and for each of the Debtors' Estates. There is no substantive consolidation of the Debtors in this Plan. The Plan Administrator will pay out creditors of each Debtor according to that Debtors' own assets and liabilities and the Proofs of Claim against that particular Debtor. The Plan Administrator may account for any intercompany claims between the Debtors in their distributions.

### C. *Transactions Effective as of the Effective Date*

The transactions contemplated by this Plan shall be approved and effective on the Effective Date without the need for any further state or local regulatory approvals or approvals by any non-Debtor parties, and without any requirement for further action by the Bankruptcy Court, the Debtor, its officers or directors, or any other Person or Entity.

On the Effective Date, pursuant to sections 105(a), 1123, 1129, 1141, and 1142 of the Bankruptcy Code, the Plan Administrator shall assume management and control of each Post-Effective Date Debtor and its Assets, including Causes of Action and privileges to the maximum extent such privileges may be transferred to or exercised by an estate representative under applicable law, such that:

i. all Assets of the Debtors shall vest or revest, as applicable, in the corresponding Post-Effective Date Debtor and shall be considered Plan Administration Assets and shall be controlled by the Plan Administrator, subject to this Plan and the Confirmation Order;

ii. all Claims and Causes of Action owned or held by each Debtor or Estate shall remain owned by the corresponding Post-Effective Date Debtor and shall be administered and controlled by the Plan Administrator;

iii. any right to object to any filed Proofs of Claim shall be the right of the Plan Administrator; and any other party in interest; and

iv. all Retained Causes of Action shall be retained by the applicable Post-Effective Date Debtor and may be prosecuted, settled, abandoned, or otherwise administered by the Plan Administrator as estate representative under section 1123(b)(3)(B) of the Bankruptcy Code.

As of the Effective Date, to the maximum extent provided by Bankruptcy Code sections 1141(c) and 363(f), all property of the Post-Effective Date Debtors shall vest as provided herein free and clear of all Claims, encumbrances, Equity Interests, charges, and Liens except as provided or contemplated in the Plan or as provided in the Confirmation Order, or the Cash Collateral Order. Provided, that nothing in this Plan or the Confirmation Order will discharge, release, enjoin or prevent the offset, setoff, recoupment, or assertion of any rights, remedies, claims, counterclaims, defenses, equitable relief, available to the parties or causes of action in the Jackson County Litigation (as defined in the Disclosure Statement), and as of the Effective Date the Plan Administration shall have all rights, remedies, claims and privileges to the Debtors in the Jackson County Litigation and may prosecute, defend and settle that matter in his discretion, subject to Bankruptcy Court approval of any settlement.

On the Effective Date, all of the corporate organizational documents of the Debtors shall be deemed amended without further action by any party to (i) appoint the Plan Administrator and vest the Plan Administrator with all authority and power to oversee the liquidation and the affairs of the Debtors and the Post-Effective Date Debtors; and (ii) eliminate any voting or other governance rights of any member or manager in the Debtors and the Post-Effective Date Debtors, as applicable. The Plan Administrator shall be subject to the same rules and procedures as the Debtors during the administration of the Chapter 11 Cases, including seeking approval for

employment of any professionals, seeking payment for any professionals, approving sales of assets, approving settlements and similar

**D. *Uses of Cash***

The Plan Administrator may use any Cash in the UMB Account up to the $750,000 limit provided in this Plan to pay items needed to be paid on the Effective Date of the Plan as well as for any Plan Administration Expenses. Aside from the remaining amounts in the UMB Account, the Plan Administrator may use all other Assets and Post-Effective Date Assets of the Debtors to make payments pursuant to this Plan including for Plan Administration Expenses.

**E. *Plan Administrator***

1. Appointment The Plan Administrator shall administer all aspects of this Plan and take over all operations, management and control of the Post-Effective Date Debtors on the Effective Date. The Plan Administrator is not a statutory trustee appointed under section 1104 of the Bankruptcy Code and shall not be required to post a bond unless ordered by the Bankruptcy Court.

2. Powers and Authority On and after the Effective Date, the Plan Administrator shall have the authority and right, on behalf of the Debtors and each Post-Effective Date Debtor and Estate and subject to this Plan, the Confirmation Order, and applicable law, to carry out and implement all provisions of this Plan, (subject to Bankruptcy Court approval where required under the applicable procedural rules) including, without limitation, the authority to:

(a) control and effectuate the Claims reconciliation process, including the exclusive authority to object to, seek to subordinate, compromise or settle any and all Claims against the Debtors;

(b) make Distributions to Holders of Allowed Claims in accordance with this Plan, including, without limitation, to establish sufficient reserves necessary to make distributions on account of Claims that may become Allowed after the Effective Date;

(c) receive, manage, invest, supervise, abandon and protect any and all property of the Post-Effective Date Debtors, including the Plan Administration Assets, consistent with the terms of the Plan, and take all actions necessary to effectuate same;

(d) exercise reasonable business judgment to direct and control the liquidation, sale, or abandonment of the Assets of the Debtors;

(e) investigate and analyze the Causes of Action and decide whether to abandon, pursue, litigate, or settle such claims;

(f) prosecute, as a representative of the applicable Estate under section 1123(b)(3)(B) of the Bankruptcy Code, any Cause of Action; substitute for

any Debtor in pending litigation involving the Debtors; and defend, settle, dismiss, confess judgment, or otherwise resolve as necessary any pending litigation;

(g) analyze, review and object to, as needed, all Administrative Claims and all Professional Fee Claims and any Proofs of Claim;

(h) retain and compensate professionals and agents to assist the Plan Administrator, on terms disclosed in the Plan Supplement or otherwise approved under the Plan or Confirmation Order;

(i) facilitate maintenance of the books and records and accounts of the Debtors and obtain any necessary insurance;

(j) incur and pay all Plan Administration Expenses, subject to Bankruptcy Court approval for any payments to Professional Persons;

(k) administer the tax-related obligations of the Debtors and their Estates, if any, including (i) filing tax returns and paying tax obligations, if necessary (ii) requesting, if necessary, an expedited determination of any unpaid tax liability of the Debtor or its Estate under Bankruptcy Code section 505(b) for all taxable periods of the Debtor ending after the Petition Date through the liquidation of the Debtors as determined under applicable tax laws, and (iii) representing the interest and account of the Debtors or its Estates before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit;

(l) prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Debtors that are required hereunder, by any Governmental Unit or applicable law;

(m) dissolve each Debtor and complete its winding up after completion of Distributions and other Estate administration, without further action by any other members, managers, officers, or further actions to be taken by or on behalf of the Debtor or its shareholders or members, managers, or directors;

(n) facilitate payment of Statutory Fees in accordance with Article II.A.3 of this Plan;

(o) undertake all administrative functions in the Chapter 11 Cases for the Post-Effective Date Debtors pursuant to the terms of the Plan and Confirmation Order, including the closing of any Chapter 11 Cases of the Debtors in accordance with the Bankruptcy Code and the Bankruptcy Rules;

(p) appear and be heard on behalf of each Post-Effective Date Debtor and Estate before any court, tribunal, agency, commission, or other body of any Governmental Unit;

(q) perform other duties and functions that are consistent with the implementation of this Plan, and take control of all books, records, accounts, communications, including any and all data and electronic records, servers, cloud accounts, bank records or any other electronic information belonging to any of the Debtors or their Estates or any of the proceeding that are in the custody or control of any of the Debtors or their agents; and

(r) exercise any other power vested in them pursuant to this Plan, including any Plan Supplements, the Confirmation Order, another order of the Bankruptcy Court, or pursuant to any applicable law that, in the exercise of the Plan Administrator's discretion, is reasonably necessary or appropriate to implement the Plan.

3. Indemnification The Debtors or the Post-Effective Date Debtors, as applicable, shall indemnify and hold harmless, as a Plan Administration Expense, (i) the Plan Administrator in connection with carrying out the obligations under the Plan, and (ii) such other Persons retained by the Plan Administrator (collectively, the "Plan Administration Indemnified Parties"), from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, other than acts or omissions that the Bankruptcy Court has determined by Final Order resulted from such Plan Administration Indemnified Party's willful misconduct, fraud, or gross negligence, with respect to the Debtor or the implementation or administration of the Plan.

4. Compensation and Retention of Professionals

The Plan Administrator shall be compensated on the terms disclosed in the Plan Supplement and approved in the Confirmation Order. The Plan Administrator may retain attorneys, accountants, financial advisors, brokers, tax professionals, and other agents on terms the Plan Administrator determines are reasonable, subject to any notice, reporting, or approval procedures established by the Bankruptcy Code. Compensation and reimbursable expenses shall be allocated among the Debtors based on services rendered and benefits received.

5. Resignation, Removal, and Successor

The Plan Administrator may resign on thirty (30) days' notice filed with the Bankruptcy Court. The Plan Administrator may be removed for cause by the Bankruptcy Court after notice and a hearing. A successor may be appointed by the Bankruptcy Court on motion of the resigning Plan Administrator, the Moving Creditors, the U.S. Trustee, or a party in interest. No resignation or removal shall be effective until a successor accepts appointment, unless the Bankruptcy Court orders otherwise.

6. Reports; Books and Records

The Plan Administrator shall maintain separate books and records for each Debtor, provide periodic reports of receipts, disbursements, reserves, Claims activity, litigation, and anticipated case-closing steps as required by the Confirmation Order, and preserve or dispose of books and

records under a records-retention protocol disclosed in the Plan Supplement or approved by the Bankruptcy Court. The Plan Administrator may apply for an order of the Bankruptcy Court to assist enforcement of any of the provisions of the Plan, including access to all books and records of any of the Debtors or their Estates, and all third parties may rely on the terms of the Plan, after the Effective Date to provide such information without the further consent of Debtors or Mr. Jeffrey Teghetoff.

**F.** ***The Plan Administration Assets***

As of the Effective Date, all Plan Administration Assets and all Assets dealt with in this Plan shall be free and clear of all Liens, Claims, and Interests except as otherwise further provided in this Plan or the Confirmation Order.

Upon indefeasible payment of all Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Other Secured Claims, UMB Secured Claim, Allowed General Unsecured Claims and all Plan Administration Expenses, and to the extent that the Plan Administrator determines in good faith and on a reasonable basis, that substantially all of the Claims and expenses that are Allowed are paid in full with interest and there are no longer outstanding or otherwise satisfied in full and all expenses, reserves or contingencies are no longer needed, the Plan Administrator shall remit any remaining unused Plan Administration Assets (or proceeds thereof) to Bankruptcy Court for further determination.

**G.** ***Corporate Action***

On the Effective Date, all actions contemplated by this Plan shall be deemed authorized, approved, and, to the extent previously taken consistently with this Plan, ratified without any requirement for further action by Holders of Claims or Interests, the Bankruptcy Court, the Debtors, or any other Person or Entity. All matters provided for in this Plan involving the corporate structure of the Debtors, and any corporate action expressly required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors, the Post-Effective Date Debtors or the applicable Debtors' Estate.

On and after the Effective Date, the Plan Administrator is authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of this Plan in the name of and on behalf of the Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to this Plan.

**H.** ***Exemption From Transfer Taxes and Fees.*** To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any transfer pursuant to, in contemplation of, or in connection with this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or fee, or other similar tax, fee or governmental assessment, and the appropriate state or local government officials, recording officers or agents, wherever located and by whomever

appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code and shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, fee or governmental assessment.

**I.** ***Directors, Managers, and Officers of the Debtor***

On and after the Effective Date, the Plan Administrator shall serve as the sole member, shareholder, interest holder, officer, director or authorized manager and representative of each Post-Effective Date Debtor for purposes of implementing this Plan and shall possess the governance powers necessary, and all others under applicable law, to wind down, liquidate, and dissolve each Debtor, without being deemed the beneficial owner of any canceled Equity Interest. For the avoidance of doubt, the Plan Administrator shall control the attorney-client privilege, any work product protections, and any and all similar privileges or protections, and may in his discretion elect to waive such privileges and protections on behalf of each Debtor and Post-Effective Date Debtor to the same extent and in the same manner that each Debtor could do so prior to the Effective Date.

**J.** ***Insurance Policies***

Notwithstanding anything to the contrary in this Plan or the Confirmation Order, to the extent any Insurance Policies have not already been assumed and assigned, then: (i) on the Effective Date, the Debtor shall be deemed to have assumed all such Insurance Policies pursuant to sections 105(a) and 365(a) of the Bankruptcy Code, without the need for any further notice or action, order, or approval of the Bankruptcy Court; and (ii) neither Confirmation nor Consummation of this Plan shall alter, impair or otherwise modify the terms and conditions of any such Insurance Policy or the coverage provided pursuant thereto.

**K.** ***Subpoena Power and Cooperation of Jeffrey Tegethoff***

The Plan Administrator shall have the full power to seek production of documents and testimony, including full subpoena power and full rights under Fed. R. Bankr. P. 2004, 9016 and Fed. R. Civ. P. 45 on and after the Effective Date to investigate Causes of Action and obtain information needed in furtherance of his duties under the Plan. Subject to Mr. Tegethoff's right of self-incrimination under 5th amendment of the United States Constitution, Mr. Tegethoff must cooperate with the Plan Administrator and such compliance can be enforced under all applicable law, including but not limited to Fed. R. Bankr. P. 2004, Fed. R. Bankr. P. 9016 and Fed. R. Proc. 45, 11 U.S.C. § 105 and all of the Bankruptcy Court's contempt powers. Service of Process of any request by the Plan Administrator may by email to: jeff@tegethoffdevelopment.com (or such subsequent email address as Mr. Tegethoff notifies the Plan Administrator in writing to communicate with him regarding), and first class mail service postage prepaid to 2275 / 2323 Highway F, Defiance, MO 63341. No further service is needed or required. If Mr. Tegethoff does not agree to provide such documents, information or testimony within ten (10) days of the Plan Administrator's request, the Plan Administrator may move for an order of this Court to enforce such obligations.

# ARTICLE VI.

# TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

## A. *Rejection of Executory Contracts and Unexpired Leases*

Except as otherwise provided herein, as of the Effective Date, the Debtors and Post-Effective Date Debtors shall be deemed to have rejected all Executory Contracts and Unexpired Leases that (1) have not been previously rejected, assumed, or assumed and assigned, and are not the subject of a pending motion or notice to reject, assume, or assume and assign as of the Effective Date, and (2) have not expired under their own terms prior to the Effective Date; provided, however, that nothing in this section shall reject, terminate, or impair any Insurance Policy except to the extent expressly provided by Final Order. For the avoidance of doubt, notwithstanding anything else in this Plan, however, each Debtor and Post-Effective Date Debtor shall remain bound by the provisions of any operating agreement, shareholder agreement, bylaws, or similar agreements for an Entity in which such Debtor and Post-Effective Date Debtor is an equity holder as of the Effective Date, subject to all requirements and provisions thereof.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the foregoing rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

## B. *Preexisting Obligations Under Executory Contracts and Unexpired Leases*

Rejection of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtor under such contracts or leases. In particular, notwithstanding any nonbankruptcy law to the contrary, the Debtor expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtor, as applicable, from counterparties to rejected or repudiated Executory Contracts or Unexpired Leases.

## C. *Assumption of the D&O Policies*

To the extent there are any D&O Policies, the Debtors and the Post-Effective Date Debtors, as applicable, shall assume all of the D&O Policies pursuant to section 365(a) of the Bankruptcy Code. Unless previously effectuated by separate order entered by the Bankruptcy Court, Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor's foregoing assumption of each of the D&O Policies and authorization for the Debtor to take such actions, and to execute and deliver such documents, as may be reasonably necessary or appropriate to implement, maintain, cause the binding of, satisfy any terms, rights or conditions of, or otherwise secure for the insureds the benefits of the D&O Policies.

## D. *Rejection Damages Claims*

All Claims arising from the rejection of Executory Contracts or Unexpired Leases under this Plan (including, without limitation, Claims that assert any indemnification right pursuant to corporate governance documents of the Debtors that have been rejected) must be filed with the

Court and served upon the Plan Administrator, as applicable, within thirty (30) days after the occurrence of the Effective Date in accordance with the instructions and procedures set forth in the Confirmation Order; provided, that the foregoing deadline shall apply only to Executory Contracts or Unexpired Leases that are rejected automatically by operation of Article VI.A above, and the deadline for filing any rejection damages Claims relating to any Executory Contracts or Unexpired Leases rejected pursuant to a separate order of the Bankruptcy Court shall be the applicable deadline under such order or the Claims Bar Date Order, as applicable. Any Claim arising from the rejection of an Executory Contract or Unexpired Lease that becomes an Allowed Claim shall be classified and treated as a Class 7 General Unsecured Claim.

## ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

### A. *Timing and Calculation of Amounts to Be Distributed; Entitlement to Distributions*

1. Timing and Calculation of Amounts to Be Distributed and Date of Distributions

The Plan Administrator shall make Distributions when the Plan Administrator determines that doing so is economically practicable and consistent with appropriate reserves; provided that the Plan Administrator may refrain or defer a Distribution to the extent that the Plan Administrator reasonably determines, in their sole discretion, that the costs of making such Distribution are disproportionate to the amount to be distributed. The Plan Administrator may aggregate such Distribution and may instead defer making such Distribution to a later date when such Distribution is economically practicable. If and to the extent that there are Disputed Claims, Distributions on account of such Disputed Claims shall be administered pursuant to the provisions set forth in this Article VII.C.

2. Entitlement to Distributions

On and after the Effective Date, the Plan Administrator shall be authorized (but not directed) to recognize and deal only with those Holder of Claims listed on the Debtors' books and records as of the Distribution Record Date. Accordingly, the Plan Administrator will have no obligation to recognize the assignment or other disposition of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute any securities, property, notices, and other documents only to those Holders of Allowed Claims who are Holders of Claims (or participants therein) as of the close of business on the Distribution Record Date. Claims may be transferred after the Distribution Record Date only by a Final Order of the Bankruptcy Court, provided a claimant can withdraw a Proof of Claim at any time subject to a Final Order of the Bankruptcy Court.

### B. *Plan Administrator*

Except as otherwise provided herein, all Distributions under this Plan shall be made by the Plan Administrator or its designee from the Assets of the Debtor against which the applicable Claim is Allowed.

**C. *Distributions on Account of Disputed Claims Allowed After the Effective Date***

Notwithstanding any provision otherwise in this Plan and except as otherwise agreed to by the Plan Administrator, (a) no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until all disputes in connection with such Disputed Claim have been resolved by settlement or Final Order and such claim becomes an Allowed Claim; and (b) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any Distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order.

**D. *Delivery of Distributions and Undeliverable or Unclaimed Distributions***

1. Delivery of Distributions in General

Except as otherwise provided herein, the Plan Administrator shall make Distributions to Holders of Allowed Claims at the address for each such Holder as indicated on (a)such Holder's address on its Proof of Claim, if applicable, (b)such Holder's address listed on a notice filed with the Bankruptcy Court, if applicable, or (c) if neither (a) or (b) is available, the address of record for the Holder listed on the Debtors' records or Schedules.

2. Undeliverable Distributions and Unclaimed Property

(a) Failure to Claim Undeliverable Distributions

In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Plan Administrator has determined the then-current address of such Holder, at which time such Distribution shall be made to such Holder without interest. Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety (90) days from the date the Distribution was returned. After such date, such unclaimed Distribution shall revert to the applicable Post-Effective Date Debtor and its applicable Estate (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Holder of such Claim shall receive no Distribution from the applicable Debtor on account of such Claim.

(b) Failure to Present Checks

Checks issued by the Plan Administrator on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the issuance of such check. Requests for reissuance of any check must be made directly to the Plan Administrator by the Holder of the relevant Allowed Claim for which such check was originally issued. After such date, such unclaimed Distribution shall revert to the applicable Post-Effective Date Debtor and its applicable Estate (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Holder of such Claim shall receive no Distribution from the applicable Debtor on account of such claim. Nothing contained herein shall require the Plan Administrator to attempt to locate any Holder of an Allowed Claim.

3. Record Date for Distributions

For purposes of making Distributions, the Plan Administrator shall be authorized and entitled to recognize only those Holders of Claims reflected in the Debtors' books and records as of the close of business on the Distribution Record Date.

4. Fractional Distributions

Notwithstanding anything in this Plan to the contrary, no payment of fractional cents shall be made pursuant to this Plan. Whenever any payment of a fraction of a cent under this Plan would otherwise be required, the actual distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down.

5. De Minimis Distributions

Notwithstanding anything to the contrary contained in this Plan, the Plan Administrator shall not be required to distribute, and shall not distribute, Cash or other property to the Holder of any Allowed Claim if the amount of Cash or other property to be distributed on account of such Claim is less than $25. Any Holder of an Allowed Claim on account of which the amount of Cash or other property to be distributed is less than $25 shall receive no Distribution from the applicable Post-Effective Date Debtor on account of such claim and be forever barred from asserting such Claim against the Estate.

## E. *Compliance with Tax Requirement; Allocations*

In connection with this Plan and all Distributions hereunder, the Plan Administrator shall take any and all actions that may be necessary or appropriate to comply with all applicable withholding and reporting requirements imposed on them. Notwithstanding any provision in this Plan to the contrary, all Persons and Entities holding Claims or Interests shall be required to provide any information necessary to effect information reporting and the withholding of applicable taxes (or establish eligibility for an exclusion for the withholding of taxes), and each Holder of an Allowed Claim or Interest will have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations associated therewith, including income, withholding, and other tax obligations. Any amounts withheld or reallocated pursuant to this Section shall be treated as if distributed to the Holder of the Allowed Claim. The Plan Administrator reserves the right to allocate all Distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

The Plan Administrator may require, as a condition to the receipt of a Distribution, that a Holder furnish to the Plan Administrator any necessary or appropriate tax documentation and information, including a Form W-8 or Form W-9. If any Holder fails to comply with such a request within two (2) months thereof, such Distribution in respect of such Holder may be withheld and deemed an undeliverable Distribution and shall be treated in accordance with Article VII.D.2 hereof.

## F. *Claims Paid or Payable by Third Parties*

1. Claims Paid by Third Parties

The Plan Administrator shall reduce in full a Claim, and such Claim shall be Disallowed upon an order of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor, a Post-Effective Date Debtor, or the Plan Administrator. To the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not a Debtor, a Post-Effective Date Debtor, or the Plan Administrator on account of such Claim, such Holder shall return the excess to the Plan Administrator within fourteen (14) days after receipt or demand, whichever is later.

2. Claims Payable by Third Parties

No Distributions under this Plan shall be made on account of a Claim that is payable pursuant to one of the Insurance Policies until the Holder of such Claim has exhausted all remedies with respect to such Insurance Policy. To the extent that one or more Insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon satisfaction by such Insurer(s), such Claim may be reduced or expunged to the extent of such satisfaction without need for any further action by or approval from the Bankruptcy Court.

3. Applicability of Insurance Policies

Except as otherwise provided in this Plan, payments to Holders of Claims covered by Insurance Policies shall be in accordance with the provisions of any applicable Insurance Policy. Nothing contained in this Plan shall constitute or be deemed a waiver (i) of any Cause of Action that a Debtor or any Entity may hold against any Insurers under any Insurance Policies, or (ii) by such Insurers of any rights or defenses held by such Insurers.

4. Guaranty Claims Supported by Nondebtor Collateral

Except to the extent that the Holder of a Guaranty Claim possesses a valid and enforceable Lien on property which is property of any of the Estates, each Guaranty Claim shall be treated as a General Unsecured Claim in Class 7. A Lien on Nondebtor Collateral shall not, solely by reason of such Lien, cause a Guaranty Claim to be treated as a Secured Claim against any Debtor or Estate.

Each Guaranty Claim shall be Allowed only to the extent enforceable against the applicable Debtor under the governing guaranty, section 502 of the Bankruptcy Code, and applicable nonbankruptcy law. The Plan Administrator may request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Guaranty Claim pursuant to section 502(c) of the Bankruptcy Code. Any order estimating a Guaranty Claim shall specify whether the estimate constitutes: (i) the Allowed amount of the Claim; (ii) a maximum limitation on the Claim; or (iii) an amount established solely for reserve or distribution purposes.

Unless required by the governing guaranty, applicable law, or a Final Order, the filed or Allowed amount of a Guaranty Claim shall not be reduced merely by the appraised, projected, or estimated value of unrealized Nondebtor Collateral. Actual Nondebtor Recoveries shall be accounted for below.

No Distribution shall be made on account of a Disputed Guaranty Claim unless and until such Claim becomes Allowed, except as otherwise agreed by the Plan Administrator or ordered by the Bankruptcy Court. Before making a Distribution to Holders in the applicable Class, the Plan Administrator shall establish a reserve equal to the Distribution that would be payable if the Disputed Guaranty Claim were Allowed in: (i) its filed amount; (ii) a lower amount estimated or limited by the Bankruptcy Court; or (iii) another amount agreed by the Holder and the Plan Administrator. If the Proof of Claim states the amount as unknown, contingent, or unliquidated, the reserve shall be based on an amount agreed by the parties or established by the Bankruptcy Court. If a Disputed Guaranty becomes Allowed, the Holder shall receive the cumulative Distribution it would have received had the Claim been Allowed on the Effective Date and any excess reserve shall be released for Distribution to other Holders in the applicable Class.

Notwithstanding anything in the Plan to the contrary, the cumulative Distributions made on account of an Allowed Guaranty Claim shall not exceed the Outstanding Guaranteed Amount. No Holder may receive or retain Distributions under the Plan that, when combined with Nondebtor Recoveries allocable under the governing documents and applicable law to the guaranteed portion of the Primary Obligation, would result in the Holder receiving more than one hundred percent of the amount recoverable under the Primary Obligation and the applicable guaranty, including only such interest, fees, expenses, and other charges as are enforceable and Allowed. When the Outstanding Guaranteed Amount has been reduced to zero, the Guaranty Claim shall be deemed satisfied for Distribution purposes, and no further Distribution shall be made on account of that Claim.

As a condition to receiving any Distribution, the Holder of an Allowed Guaranty Claim shall, upon reasonable request of the Plan Administrator, certify in writing:

1. the amount and status of the corresponding Primary Obligation;
2. all Nondebtor Recoveries received through the certification date;
3. any pending or anticipated foreclosure, sale, settlement, insurance payment, insolvency distribution, or other material recovery;
4. the Holder’s calculation of the Outstanding Guaranteed Amount; and
5. such supporting documentation as the Plan Administrator may reasonably request.

If a Holder fails to provide a required certification, the Plan Administrator may withhold the Distribution otherwise payable, provided that the withheld amount remains reserved pending compliance or further order of the Bankruptcy Court. A Holder receiving an amount in excess of the applicable limitation shall return the excess to the applicable Post-Effective Date Debtor within ten (10) Business Days after demand. The Plan Administrator may set off the excess against later Distributions and may seek disgorgement or other appropriate relief from the Bankruptcy Court.

Except to the extent of actual satisfaction of the Primary Obligation or as otherwise expressly agreed by the affected Holder, nothing in the Plan or Confirmation Order shall release, enjoin, impair, or otherwise affect the Holder’s rights against a Nondebtor Underlying Obligor, another nondebtor guarantor, an insurer or surety, or Nondebtor Collateral. Neither the Debtors nor the Plan Administrator shall be deemed to own, possess, administer, or dispose of Nondebtor Collateral solely by reason of the treatment of a Guaranty Claim under the Plan.

### G. *Allocation of Plan Distributions between Principal and Interest*

To the extent that any Allowed Claim entitled to a Distribution under this Plan is comprised of indebtedness and accrued but unpaid interest (or original issue discount) thereon, such Distribution shall, except as required by law (as reasonably determined by the Plan Administrator), be allocated first to the principal amount of the Claim and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest (or original issue discount).

## ARTICLE VIII.

## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

### A. *Allowance and Disallowance of Claims*

No Claim shall be deemed Allowed unless and until such Claim is Allowed under the Bankruptcy Code, this Plan, the Bankruptcy Court enters a Final Order in the Chapter 11 Case allowing such Claim. The Plan Administrator after Consummation will have and retain any and all rights, claims, counterclaims, defenses, and objections that a Debtor or Estate had with respect to any Claim.

Any Claim filed after the applicable Claims Bar Date shall be automatically deemed Disallowed unless such Holder of the Claim obtains Bankruptcy Court approval to file a late claim.

### B. *Prosecution of Objections to Claims*

The Plan Administrator shall have the authority to file, prosecute, settle, compromise, withdraw, or litigate objections to Claims. From and after the Effective Date, the Plan Administrator may settle or compromise any Disputed Claim, and may administer and adjust the Claims Register to reflect such settlements or compromises, with notice to and approval of the Bankruptcy Court.

To the fullest extent permitted by applicable law, the Plan Administrator, as representative of the Post-Effective Date Debtors and Estates, shall succeed to and may preserve, assert, or waive the Debtors' rights in the attorney-client privilege, work-product doctrine, and other privileges, including joint or common-interest privileges, subject to any rights of other holders of such privileges.

### C. *Estimation of Claims*

The Plan Administrator may request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Plan Administrator has previously objected to such Claim. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning an objection to a Claim. In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum

limitation on such Claim, the Plan Administrator may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned objection, estimation, and resolution procedures are cumulative and not exclusive of one another.

### D. *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim as a Claim other than a Subordinated Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Plan Administrator shall provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under this Plan as of the Effective Date, without any postpetition interest to be paid on account of such Claim.

### E. *Disallowance of Certain Claims*

Any Claims held by Entities from which property is recoverable under Bankruptcy Code sections 542, 543, 550, or 553, or that is a transferee of a transfer avoidable under Bankruptcy Code sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a), shall not receive any Distributions on account of such Claims until such time as such Causes of Action against that Entity have been settledor a Final Order of the Bankruptcy Court with respect thereto has been entered and all sums due, if any, to a Debtor by that Entity have been turned over or paid to the Post-Effective Date Debtors.

## ARTICLE IX.

## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THIS PLAN

### A. *Conditions Precedent to Confirmation*

Unless satisfied or waived in accordance with the provisions of Article IX.C, the following are conditions precedent to Confirmation of this Plan:

1. The Disclosure Statement Order shall have been entered by the Bankruptcy Court on a final basis.

2. The Confirmation Order shall have been entered by the Bankruptcy Court and shall not have been vacated, amended or otherwise modified.

### B. *Conditions Precedent to the Effective Date*

In addition to the satisfaction of the provisions of Article IX.A hereof, unless satisfied or waived in accordance with Article IX.C, the following are conditions precedent to the occurrence of the Effective Date:

1. The Confirmation Order shall have been entered by the Bankruptcy Court, and shall not have been vacated, amended or otherwise modified.

2. No order, injunction or judgment shall have been issued by any Governmental Units, or other governmental authority, or arbitrator to restrain, prohibit, enjoin or declare illegal the transactions contemplated by this Plan, and no law shall have been promulgated or enacted and be in effect that on, a temporary or permanent basis restrains, enjoins, or invalidates the transactions contemplated by this Plan.

**C.** ***Waiver of Conditions***

Subject to section 1127 of the Bankruptcy Code, the conditions precedent to Confirmation Consummation of this Plan set forth in this Article VIII may be waived by the Moving Creditors with or without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate this Plan. The failure of the Moving Creditors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each right will be deemed an ongoing right that may be asserted at any time.

**D.** ***Effect of Non-Occurrence of Conditions to Confirmation or Consummation***

If the Confirmation or the Consummation of this Plan does not occur, then this Plan will be null and void in all respects and nothing contained in this Plan or the Disclosure Statement will: (1) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtors; (2) prejudice in any manner the rights of the Moving Creditors, any Holders or any other Entity; (3) constitute an Allowance of any Claim; or (4) constitute an admission, acknowledgment, offer or undertaking by the Moving Creditors, any Holders or any other Entity in any respect.

**E.** ***Substantial Consummation***

On the Effective Date, this Plan shall be substantially consummated within the meaning of sections 1101(2) and 1127(b) of the Bankruptcy Code.

## ARTICLE X.

## RELEASES AND CONTINUATION OF THE AUTOMATIC STAY AND INJUNCTION

**A.** ***No Releases and No Stay of Litigation Against Jeffrey Tegethoff or Other Nondebtors***

No Person is released under the terms of this Plan. Nothing in this Plan provides for or releases, exculpates, stays, or enjoins any action, claim, counterclaim, or other litigation or enforcement against Jeffrey Tegethoff or any other debtor or nondebtor Affiliate, guarantor, insurer, or other Person, except to the extent of actual satisfaction of a claim or as expressly agreed otherwise between the nondebtor and the person or entity holding the claim.

**B.** ***No Discharge***

Because this Plan provides for liquidation of substantially all Estate property and the Debtors will not engage in business after Consummation, the Debtors shall not receive a discharge under section 1141(d)(3) of the Bankruptcy Code. No Claim shall be deemed satisfied except to the extent of actual payment, release by the Holder, or other treatment expressly provided by this Plan or a Final Order.

**C. *Continuation of the Automatic Stay as a Post-Effective Date Injunction***

**EXCEPT TO THE EXTENT THE AUTOMATIC STAY HAS ALREADY BEEN LIFTED OR MODIFIED (INCLUDING BUT NOT LIMITED TO THE LAKEPORT ENTITIES ORDER ON STAY RELIEF), ON THE EFFECTIVE DATE, THE CONFIRMATION ORDER WILL CONTINUE THE EFFECT AND PROVISIONS OF THE AUTOMATIC STAY AS A POST-CONFIRMATION INUNCTION UNDER THE BANKRUPTCY CODE AS TO THE DEBTORS, THEIR ESTATES AND THE DEBTORS' ASSETS AND ANY CAUSES OF ACTION. SUCH STAY MAY BE TERMINATED, MODIFIED OR LIFTED BY FURTHER FINAL ORDER OF THE BANKRUPTCY COURT, PROVIDED THAT SUCH POST CONFIRMATION INJUNCTION WILL TERMINATE UPON THE CLOSING OF THE BANKRUPTCY CASES. PROVIDED FOR THE AVOIDANCE OF DOUBT THERE WILL BE NO CO-DEBTOR STAY AS TO ANY NON-DEBTOR AFFILIATES.**

**D. *Preservation of All Causes of Action Not Expressly Settled or Released***

All Causes of Action of the Debtors or the Estates (including, without limitation, Causes of Action not specifically identified or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the Confirmation or Consummation of this Plan based on the Disclosure Statement, this Plan, or the Confirmation Order, except in each case where such Causes of Action have been expressly waived, relinquished, released, compromised or settled in a Final Order. In addition, the Plan Administrator, as applicable, expressly reserves the right to pursue or adopt any claims alleged in any lawsuit in which a Debtor or Debtors are plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits. No Entity may rely on the absence of a specific reference in this Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor or the Plan Administrator will not pursue any and all available Causes of Action against them.

## ARTICLE XI.

## RETENTION OF JURISDICTION

Pursuant to Bankruptcy Code sections 105 and 1142. and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall on and after the Effective Date, retain exclusive jurisdiction over the Chapter 11 Cases, and all Entities with respect to all matters arising in, arising under, or related to the Chapter 11 Cases, the Debtors, the Estates, this Plan, the Confirmation Order, including, without limitation, the jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate or establish the priority or Secured or unsecured status of any Claim, including, without limitation, the resolution of any request for payment of any Administrative Claim or Professional Fee Claim and the resolution of



121612711.5

any and all objections to the allowance or priority of any such Claim, including equitable subordination or other subordination of any Claim pursuant to 11 U.S.C. § 510;

2. grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date;

3. resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease and to adjudicate and, if necessary, liquidate, any Claims arising therefrom;

4. resolve any issues related to any matters adjudicated in the Chapter 11 Cases;

5. hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

6. ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan and adjudicate any and all disputes related thereto;

7. decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

8. enforce all orders previously entered by the Bankruptcy Court;

9. enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with this Plan, the Plan Supplement or the Disclosure Statement;

10. resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of this Plan or any Person's or Entity's obligations incurred in connection with this Plan;

11. hear and determine all Causes of Action that are pending as of the Effective Date or that may be commenced in the future;

12. issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with Consummation or enforcement of this Plan;

13. enforce the terms and conditions of this Plan and the Confirmation Order, and maintain the integrity of this Plan following Consummation;

14. hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, remedy any defect or omission or reconcile any inconsistency in the Plan,

or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

15. resolve any cases, controversies, suits or disputes concerning the release, Exculpation, indemnification, and other provisions contained in Article IX of the Plan and enter such orders or take such other actions as may be necessary or appropriate to implement or enforce all such provisions;

16. enter and implement such orders or take such other actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

17. resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, any Plan Supplement, or any release or exculpation adopted in connection with this Plan;

18. enter one or more orders or decrees closing the Chapter 11 Cases;

19. hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code.

## ARTICLE XII.

## MISCELLANEOUS PROVISIONS

### A. *Reservation of Rights*

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Effective Date occurs. Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Debtor or any other Entity with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtor with respect to the Holders of Claims or other Entity; or (2) any Holder of a Claim or an Interest, or other Entity prior to the Effective Date.

### B. *No Government Releases*

Except as expressly provided for in this Plan, nothing herein or in the Confirmation Order or other related Plan documents shall affect or limit any claim arising solely under the enforcement of the police powers or regulatory activities of the United States Government or any of its agencies, or any state and/or local authority, whatsoever, including but not limited to any criminal investigation or prosecution.

### C. *Payment of Statutory Fees*

All fees payable under 28 U.S.C.§ 1930(a) shall be paid by the Debtors (or the Plan Administrator on behalf the Debtors), as applicable, for each quarter (including any fraction thereof), until the earliest to occur of the entry of (a) a final decree closing the Debtors’ applicable Chapter 11 Cases, (b) an order dismissing the Debtors’ Chapter 11 Cases, or (c) an order converting the Debtors’ Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

**D. *Modification of Plan***

Effective as of the date hereof and subject to the limitations and rights contained in this Plan: (a) the Moving Creditors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan prior to the entry of the Confirmation Order in accordance with section 1127(a) of the Bankruptcy Code and (b) after the entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court, amend or modify this Plan in accordance with section 1127(b) of the Bankruptcy Code. A Holder of a Claim that has accepted this Plan will be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

**E. *Revocation or Withdrawal of Plan***

The Moving Creditors reserve the right to revoke or withdraw this Plan prior to the Effective Date and/or to file subsequent chapter 11 plans. If the Moving Creditors revoke or withdraw this Plan, or if Confirmation or Consummation of this Plan does not occur, then: (1) this Plan will be null and void in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement executed pursuant hereto will be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in this Plan will: (a) constitute a waiver or release of any Claims by or against, or any Interests in, the applicable Debtors or any other Entity; (b) prejudice in any manner the rights of the applicable Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the applicable Debtors or any other Entity.

**F. *Successors and Assigns***

This Plan will be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims and Interests, other parties-in-interest, and their respective heirs, executors, administrators, successors, and assigns. The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

**G. *Severability***

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### H. *Service of Documents*

Any notice, direction, or other communication concerning this Plan must be in writing and delivered by personal delivery, recognized overnight courier, first-class mail, or electronic mail, to the addresses below, as may be updated by a notice filed with the Bankruptcy Court:

| **Debtors' Counsel** | **Counsel to the Various Parties Consisting of the Moving Creditors** |
|---|---|
| Carmody MacDonald P.C.<br>Robert E. Eggmann, III<br>120 South Central Avenue, Suite 1800<br>Clayton, MO 63105<br>ree@carmodymacdonald.com | Polsinelli PC<br>Matthew S. Layfield<br>7676 Forsyth Boulevard, Suite 800<br>St. Louis, MO 63105<br>mlayfield@polsinelli.com<br><br>McCarter & English, LLP<br>Aaron D. Grant<br>10 E. Main Street, Suite 200<br>Carmel, IN 46032<br>agrant@mccarter.com<br><br>Blank Rome<br>Ken Ottaviano<br>444 West Lake Street, Suite 1650<br>Chicago, IL 60606<br>ken.ottaviano@blankrome.com<br><br>Spencer Fane LLP<br>Ryan Hardy<br>1 North State Street, Suite 1500<br>Chicago, IL 60602<br>rhardy@spencerfane.com |
| **United States Trustee** | **Proposed Plan Administrator** |
| Office of the United States Trustee<br>111 South 10th Street, Suite 6.353<br>St. Louis, MO 63102<br>joseph.schlotzhauer@usdoj.gov | Matt McKinlay, Plan Administrator<br>Ampleo<br>3401 N Thanksgiving Way, Suite 220, Lehi, UT 84043<br>mmckinlay@ampleo.com |

### I. *Governing Law*

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan will be governed by, and construed and enforced in

accordance with, the laws of the state of Missouri, without giving effect to the principles of conflicts of law of such jurisdiction.

**J. *Exhibits and Supplements***

All exhibits and schedules to this Plan, including the Exhibits and Plan Supplements, are incorporated herein and are a part of this Plan as if set forth in full herein.

**K. *Conflicts***

Except as set forth in this Plan, to the extent that any provision of the Disclosure Statement or any order (other than the Confirmation Order) referenced in this Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflicts with or is in any way inconsistent with any provision of this Plan, this Plan shall govern and control; *provided* that, in the event of any conflict with any provision of this Plan and/or the Confirmation Order, the Confirmation Order shall govern.

**L. *Entire Agreement***

Except as otherwise provided herein or therein, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

**M. *2002 Notice Parties***

After the Effective Date, the Plan Administrator may request that service under Bankruptcy Rule 2002 be limited to the U.S. Trustee, parties affected by the requested relief, and Entities that file a renewed request for notice, subject to Bankruptcy Court approval and applicable law.

Dated: October [●], 2026

Respectfully submitted,

POLSINELLI PC

*Respectfully submitted,*

POLSINELLI PC

By: */s/ Matthew S. Layfield*
MATTHEW S. LAYFIELD (MO #57540)
7676 Forsyth Boulevard, Suite 800
St. Louis, Missouri 63105
Telephone: (314) 522-6834
Facsimile: (314) 622-6798
mlayfield@polsinelli.com

-and-

By: */s/ Andrew J. Nazar*
ANDREW J. NAZAR
(admitted pro hac vice MO-57928)
900 West 48th Place, Suite 900
Kansas City, Missouri 64112
Telephone: (816) 395-0641
Facsimile: (816) 817-0231
anazar@polsinelli.com
*Attorneys to the Lakeport Entities defined above*

By: /s/ *Larry A. Pittman, II*
**LARRY A. PITTMAN, II**
(Mo: 55146, Fed: 55146MO)
720 Hawthorne Drive
Liberty, MO 64068
(816) 368.8855
(816) 817.6023 fax
lpittman@northpointlegal.com

***-and-***

BLANK ROME LLP

By:*/s/ Kenneth J. Ottaviano*
KENNETH J. OTTAVIANO
(admitted pro hac vice 6/29/26)
Ken.Ottaviano@blankrome.com
PAIGE B. TINKHAM
(admitted pro hac vice 6/22/26)
Paige.Tinkham@blankrome.com
444 W. Lake Street, 16th Floor
Chicago, Illinois 60606
Tel: (312) 776-2600
*Attorneys for XRL ALC, LLC*

Spencer Fane LLP

By: */s/ Ryan C. Hardy*
Ryan C. Hardy, 62926MO
1 N. State Street, Suite 1500
Chicago, Illinois 60602
Tel: 314-746-0047
Fax: 314-862-4656

rhardy@spencerfane.com
*Counsel to Preserve at Sycamore, LLC*

*/s/ Aaron D. Grant*
Clayton Kuhn, #55222MO
SANDBERG PHOENIX & von GONTARD P.C.
701 Market Street, Suite 600
St. Louis, MO 63101-1313
(314) 231-3332
(314) 241-7604 (fax)
ckuhn@sandbergphoenix.com

Aaron D. Grant, *pro hac vice*
Kaylin O. Cook, *pro hac vice*
McCARTER & ENGLISH, LLP
10 E. Main Street, Suite 200
Carmel, IN 46032
(317) 810-5500
(317) 602-1698 (fax)
agrant@mccarter.com
kcook@mccarter.com

*Attorneys for Creditors Solera Pearl, LLC Solera Expo, LLC, Aspen Investment Group, LLC, Solera Multifamily, LLC, and Hickory Investors, LLC*

# <u>Exhibit B</u>

## Liquidation Analysis

**[To Come][3]**

---

[3] As noted above, the Moving Creditors are preparing and will file a Liquidation Analysis prior to the hearing at which the Bankruptcy Court will consider approval of the Disclosure Statement.