**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | **Case No.: 26-42401-357** |
| | ) | |
| **TEGETHOFF DEVELOPMENT, LLC,** | ) | **Honorable Brian C. Walsh** |
| **TEGETHOFF DEVELOPMENT CO.,** | ) | **Chapter 11 Proceeding** |
| **LLC and** | ) | |
| **PEARL CAPITAL MANAGEMENT, LLC,** | ) | |
| | ) | **Related Doc. No. 7** |
| **Debtors.** | ) | |

**FIRST AMENDED DECLARATION OF ROBERT E. EGGMANN**
**IN SUPPORT OF DEBTORS' APPLICATION TO EMPLOY COUNSEL AND**
**APPROVAL OF COMPENSATION ARRANGEMENT RELATED THERETO**

COMES NOW Robert E. Eggmann, being duly sworn, states and declares as follows:

1. This First Amended Declaration of Robert E. Eggmann in Support of Debtors' Application to Employ Counsel and Approval of Compensation Arrangement Related Thereto is filed as a supplement to the Declaration of Robert E. Eggmann in Support of Debtors' Application to Employ Counsel and Approval of Compensation Arrangement Related Thereto filed on June 1, 2026 [Doc. 7]. This First Amended Declaration is filed to disclose a relationship as more set forth in paragraph 17 b hereof.

2. I am an attorney at law duly admitted to practice in the State of Missouri and before the United States District Court and Bankruptcy Court for the Eastern District of Missouri

3. I am a partner of the law firm of Carmody MacDonald P.C. (the "Firm"), which is located at 120 S. Central Avenue, Suite 1800, St. Louis, Missouri 63105. I am familiar with the matters set forth herein and make this Declaration pursuant to section 329(a) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014(a) and 2016(b) (the "Bankruptcy Rules") in support of the Application of Tegethoff Development, LLC, Tegethoff Development Co, LLC

and Pearl Capital Management LLC (the "Debtors") seeking approval to retain the Firm as counsel to Debtors effective June 1, 2026 (the "Petition Date").

4. Hourly rates for the Firm's partners for this matter will be $310.00 to $650.00 per hour, associates $285.00 to $375.00 per hour, and paralegals/law clerks $150.00 to $250.00 per hour. My current rate is $550.00 per hour. In setting its rates for a given matter, the Firm considers the complexity, size, and demands of the matter. The discussions of the Firm's rates and billing practices set forth herein are based on rates charged by the Firm in bankruptcy and non-bankruptcy matters of similar complexity, size, or demand. The Firm's hourly fees for bankruptcy matters such as these are comparable to, or less than, those charged by attorneys of similar experience and expertise for engagements of similar scope and complexity of these Chapter 11 cases (the "Chapter 11 Cases").

5. The Firm's hourly billing rates are subject to periodic adjustments to reflect annual increases and economic and other conditions. Prior to any increases in the rates set forth herein, the Firm will give ten (10) business days' notice to Debtors, the U.S. Trustee, any committee appointed in this Chapter 11 Cases, and as otherwise ordered by the Court, which adjustments will be filed with the Court.

6. The Firm will maintain detailed and contemporaneous time records in six-minute intervals and apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Court, and any additional procedures established by this Court for this Chapter 11 Cases. The Firm will use billing categories that substantially conform to the categories set forth in the United States Trustee Guidelines when applying to the Court for payment of compensation and reimbursement of expenses.

7. The following information is provided in response to the request for additional information set forth in Paragraph D.1 of the United States Trustee Guidelines:

**Question:** Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?

**Response:** No. The hourly rates the Firm will bill for this engagement are consistent with the rates that the Firm charges other comparable chapter 11 clients, and the rate structure provided by the Firm is appropriate and is not significantly different from (a) the rates that the Firm charges in other non-bankruptcy representations or (b) the rates of other comparably skilled professionals for similar engagements.

**Question:** Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?

**Response:** No.

**Question:** If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material financial terms have changed post-petition, explain the difference and the reasons for the difference.

**Response:** The Firm's current hourly rates for services rendered on behalf of the Debtors ranges as follows:

| **Billing Category** | **RANGE** |
|---|---|
| Partners | $310 - $650 |
| Associates | $285 - $375 |
| Paralegals | $150- $250 |

The Firm represented the Debtors during the twelve-month period before the Petition Date, using the hourly rates listed above.

**Question:** Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?

**Response:** A proposed budget has been discussed and approved among counsel and the clients.

8. The Firm's hourly billing rates for professionals are not intended to cover out-of-pocket expenses and certain elements of overhead that are typically billed separately. Accordingly, the Firm regularly charges for expenses and disbursements incurred in direct connection with clients' cases, including telecommunications, certain postage and packaged delivery charges, court fees, transcript costs, travel expenses, computer-aided research, and other third-party disbursements. The Firm expects to charge for these expenses in a manner and at rates consistent with charges made generally to other clients or as allowed by this Court.

9. The Firm's representation of the Debtors commenced in May of 2026. The services rendered from that date through the Petition Date include primarily bankruptcy preparation issues. As of the Petition Date, the Firm has been paid the sum of $25,494.00 for services performed prior to the Petition Date. The Firm is holding a retainer of $54,506.00.

10. After the retainer is exhausted, Debtors will pay the Firm bill monthly pursuant to any Local Rules.

11. As of the Petition Date, the Firm was not owed any amount by Debtors for attorneys' fees and expenses. Accordingly, the Firm is not a creditor of Debtors.

12. In support of the Application, I disclose the following:

a. Unless otherwise stated, this Declaration is based upon facts of which I have personal knowledge.

b. The facts stated in this Declaration as to the relationship between the Firm lawyers and Debtors, Debtors' creditors, other parties-in-interest to these Chapter 11 Cases, the U.S. Trustee, and persons employed by the Office of the United States Trustee are stated to the best of my knowledge, information, and belief and are based on the results of the searches and inquiries described in the following paragraphs.

c. In preparing this Declaration, I have (i) caused to be conducted a search of the Firm's conflict-check system (the "Conflict Database"); and (ii) caused to be disseminated a written request for information to all of the attorneys of the Firm regarding connections to the Debtors.

13. The Firm's Conflict Database is comprised of records regularly maintained in the ordinary course of business of the Firm. It is the regular practice of the Firm to make and maintain these records. It reflects entries that are noted in the system at the time the information becomes known by persons whose regular duties include recording and maintaining this information. I regularly use and rely upon the information contained in the Conflict Database in the performance of my duties with the Firm and in my practice of law.

14. Matches between the Conflict Database and potential parties-in-interest were identified. Individuals or entities that were adverse to the Firm's clients were deleted. The remaining connections with regard to which the Firm had represented the client were compiled and provided to me for purposes of this Declaration.

15. In addition, a general inquiry to all Firm attorneys was sent by electronic mail to determine if any attorney was aware of any representation or client relationship that would present a conflict of interest with respect to Firm's representation of Debtors in these Chapter 11 Cases.

16. With the exception of Commerce Bank, it appears that the Firm (i) does not hold or represent an interest adverse to and has no connection with Debtors, their creditors, or any potential parties-in-interest in connection with the scope of the Firm's retention in these Chapter 11 Cases, and (ii) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

17. Searches and request for information described above revealed the following connections:

a. From time to time, the Firm represents Commerce Bank who is a potential creditor in the case. However, the Firm does not and has never represented Commerce Bank in connection with the Debtors and Commerce Bank has separate counsel with regard to the Debtors. Further, Commerce Bank agreed to waive any existing conflict, with the understanding that should the representation become significantly adversarial (beyond regular / reasonable Bankruptcy proceedings), that counsel would agree to withdraw from these Chapter 11 Cases.

b. On or about October 7, 2026, the Firm accepted the representation of Dr. Ramis Gheith ("Dr. Gheith") in the matter a judgment entered against Dr. Gheith in favor of Patricia Birkel (the "Gheith Matter"). Dr. Gheith is an investor in the Oasis project located in the Lake of the Ozarks, Missouri. The Debtors do not believe that Dr. Gheith is a creditor of the Debtors, but I disclose this connection, nonetheless. The Firm does not and will not represent Dr. Gheith in any matter related to these Chapter 11 bankruptcy proceedings.

c. Aside from this, no other related representations were discovered. However, the Firm is a full-service law firm with active real estate, corporate, and litigation practices. As part of its practice, the Firm appears in cases, proceedings, and transactions involving many different attorneys, accountants, financial consultants, and investment bankers, some of which now or may in the future represent potential parties-in-interest.

d. The representation of Debtors commenced on or about May 15, 2026, when the Firm was asked to serve as restructuring counsel for Debtors. The Firm has not represented and does not represent any of Debtors' employees, officers, or shareholders, however, from time to time, the Firm has provided legal advice to Debtors that may have

impacted the officers and or shareholders of Debtors.

18. The Firm submits that none of the foregoing representations or connections constitutes the Firm's holding or representing an interest adverse to Debtors or their estates.

19. Except for Debtors, neither I nor the Firm will represent any entity in connection with this Chapter 11 Cases, unless otherwise authorized by the Court.

20. To the best of my knowledge, information, and belief, neither the Firm nor any attorney associated with the Firm:

a. is a creditor, an equity security holder, or an insider of Debtors;

b. is or has been, within two years before the filing of this Chapter 11 Cases, a director, officer, or employee of Debtors; or

c. has an interest materially adverse to the interests of Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in Debtors, or for any other reason.

21. The professional fees and costs incurred by the Firm in the course of its representation of the Debtors in these Chapter 11 Cases will be subject in all respects to the application and notice requirements of sections 327, 330, and 331 of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016.

22. There is no agreement of any nature as to the sharing of any compensation to be paid to the Firm, other than sharing among the shareholders, partners, and associates of the Firm. No promises have been received by the Firm nor any shareholder, partner, or associate thereof as to compensation in connection with these Chapter 11 Cases, other than in accordance with the provisions of the Bankruptcy Code.

23. I am not related to, and to the best of my knowledge no other attorney associated

with the Firm is a relative of, any Bankruptcy Judge in this District, the United States Trustee, or any person employed by the Office of the United States Trustee, other than the father of Firm partner Thomas H. Riske, Charles W. Riske, is a Chapter 7 Panel Trustee for the Eastern District of Missouri. I and Thomas H. Riske also currently serve as Subchapter V Chapter 11 Trustees in the Central and Southern Districts of Illinois, respectively.

24. I do not believe that there is any other connection (as such term is used in Bankruptcy Rule 2014(a)) between the Firm and Debtors, creditors, any other party-in-interest, their respective attorneys and accountants, the United States Trustee, or any person employed by the Office of the United States Trustee.

25. I have read Debtors' Application for an Order approving the retention of the Firm as Debtors' counsel which accompanies this Declaration and, to the best of my knowledge, information, and belief, the contents of said Application are true and correct.

*/s/ Robert E. Eggmann*

STATE OF MISSOURI )
) SS.
COUNTY OF ST. LOUIS )

On this 19th day of October, 2026, before me, the undersigned, a Notary Public, in and for the County and State aforesaid, personally appeared Robert E. Eggmann, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in St. Louis County, Missouri, the day and year last above written.

*/s/ Annie L. Lancaster*
Notary Public in and for said County and State

My Commission Expires:

ANNIE L. LANCASTER
Notary Public – Notary Seal
St. Charles County – State of Missouri
Commission Number 17209869
My Commission Expires Nov 3, 2029

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of this document was filed electronically with the United States Bankruptcy Court and has been served on the parties in interest via email by the Court's CM/ECF system as listed on the Court's Electronic Mail Notice List on this 19th day of October, 2026.

*/s/ Robert E. Eggmann*