**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 26-42401-169 |
| TEGETHOFF DEVELOPMENT, LLC, *et al.*, | ) | Chapter 11 |
| | ) | Jointly Administered |
| Debtors. | ) | Hon. Brian Walsh |
| | ) | |

**PRESERVE AT SYCAMORE, LLC'S PRELIMINARY OBJECTION TO THE DEBTORS' *MOTION FOR ORDER AUTHORIZING DEBTOR TO PAY ADVANCES***

Preserve at Sycamore, LLC ("Sycamore") submits this preliminary objection ("Objection") to the Debtors' ("Debtors'") *Motion for Order Authorizing Debtor to Pay Advances* (the "Motion," ECF 222). Capitalized terms not defined herein have the meanings ascribed to them in the Motion.

**SUMMARY OF LIMITED OBJECTION**

1. It is premature to grant the Motion, or to deny it with prejudice, because the Debtors have not offered information sufficient to assess whether the proposed loan from TD to Ellis and Helen Louise is entirely fair, or even whether it is a reasonable exercise of TD's business judgment. Sycamore fully appreciates the importance of insuring assets and, if these cases were substantively consolidated, the relief requested would almost certainly be appropriate. Here, however, TD has not (so far) demonstrated that the contemplated loan is likely to benefit its bankruptcy estate and, consequently, it would be premature to grant the Motion.

**JURISDICTION AND VENUE**

2. Sycamore agrees with the Debtors that this Court has jurisdiction, that venue is appropriate here, and that this is a core proceeding. Sycamore consents to the entry of final orders and judgments solely with respect to the Motion.

## LEGAL STANDARD

3. As noted in the Motion, the Debtors are constrained by section 363(c) of the Bankruptcy Code in their uses of cash collateral. In addition, section 363(b) of the Bankruptcy Code limits the Debtors' ability to use estate property outside the ordinary course of business.[1] The lenient "business judgment rule [typically applied under section 363(b)] is not applicable to transactions among a debtor and an insider of the debtor" because such transactions "are rife with the possibility of abuse." *In re LATAM Airlines Group, SA*, 2022 WL 272167 *14 (Bankr. S.D.N.Y. Jan. 28, 2022) (quotation omitted) (decided in context of § 364). "Instead, courts apply a heightened scrutiny test" to consider "the integrity and entire fairness of the transaction at issue, typically including the process and price of a proposed transaction not only appear fair but are fair and whether fiduciary duties were appropriately taken into consideration." *Id.* (quotation omitted).

## GROUNDS FOR OBJECTION

4. As proposed, TD would loan to Ellis and Helen Louise (the "Projects") approximately $65,692.26 so the Projects can secure insurance. The loan would incur interest at the U.S. Prime Rate and would "mature in one year." (Motion ¶ 10).

5. The Motion does not identify whether the loan would be secured by any collateral. The Motion does not identify whether the Projects will or are likely to have the cash necessary to pay the loan in full at maturity. The Motion does not identify whether interest would be paid

[1] We acknowledge the representation at paragraph 7 of the Motion that it was the "prepetition practice for TD to advance the funds to [the Projects] for the purposes of maintaining their property insurance," but such a conclusory statement is insufficient to establish that the transaction proposed here is within the ordinary course of TD's business affairs. *See, e.g.*, *In re Patriot Coal Corp.*, 492 B.R. 518, 530 (Bankr. E.D. Mo. 2013) (transfers are "in the ordinary course of business if the transfers are within the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business") (quotation omitted). Here, it is not established that advancing funds from one company for the benefit of another company is within interested parties' reasonable expectations.

monthly or if it would be deferred until the end of the one-year loan term. The Motion does not identify whether the Projects have secured creditors who may be entitled to repayment before this loan is repaid. The Motion does not identify any grounds to believe that the Projects are so creditworthy that they should be extended credit at the Prime Rate without an upward adjustment to account for repayment risk.

6. In short, the Motion never identifies when, whether, or how the proposed loan will be repaid, except in the most conclusory terms.

7. Similarly, the Motion is silent as to how the terms of the proposed loan were negotiated. Although the entities that own the Projects are insiders,[2] it is not disclosed with whom TD negotiated the loan terms or whether more favorable terms were available. Without such explanations, it is impossible to assess whether the proposed loan is entirely fair.

8. Sycamore is mindful that, in addition to a year of interest at the Prime Rate, the loan also would serve as a *de facto* protective advance to increase the likelihood that the "approximately $250,000 in member loans" already outstanding to TD from the Projects would be repaid. (Motion ¶ 6). While that may well be a valid reason to extend the loan, there is again insufficient evidence to support whether that is the case. According to the Motion, those loans are to be repaid "as cash flow allows." (*Id.*). But there is no explanation given of the Projects' cash flow or whether—and if so, when—cash flow may "allow[]" repayment.

[2] It is not immediately clear from the Motion itself whether the entities that own the Projects are statutory insiders, but it appears that they are. The documentation annexed to the Motion as Exhibit A identifies Jeffrey Tegethoff as the "owner" of the proposed insured. *See* ECF 222-1 at p. 2.

Separately, the document states that there are no "lodging operations including apartments" on the premises, which is inconsistent with the representation in the Motion that the Projects provide low-income housing. *See* ECF 222-1 at p. 7. Given that the documentation appears to include a material misrepresentation about the nature and use of the Projects, it is not evident that the insurance would even be effective in the event of a claim.

9. Sycamore is mindful, too, that "PCM is currently owed approximately $1,010,000.00 in deferred development fee income from [the Projects] which would be paid back upon the sale or refinance of the properties." (Motion ¶ 5). But:

a. A protective advance by TD to enhance PCM's estate is permissible in these unconsolidated bankruptcy cases only if such advance would enhance *TD's* bankruptcy estate; and

b. Even if that was not the case, the Motion is silent as to *when* a "sale or refinance of the properties" is anticipated, except that the Debtors "do not expect a sale to occur in the next five years." The absence of such information—among other omissions—makes it impossible to discount the deferred development fee to present value and, in turn, to compare that present value to the loan amount.

10. Sycamore emphasizes that <u>it may well be the case that the proposed loan is entirely fair and would be beneficial to TD's estate</u>. At this time, however, there is insufficient evidence to grant the Motion or to deny it with prejudice. At a bare minimum, the Debtors should supply a declaration explaining the basis for the Debtors' determination that the proposed loan is entirely fair and likely to benefit TD's estate.

11. Sycamore reserves its right to supplement or amend this preliminary Objection.

WHEREFORE, Preserve at Sycamore, LLC respectfully requests that a ruling on the Motion be continued until such time as the Motion is adequately supported or, in the alternative, that the Motion be denied. Sycamore further requests that the Court grant such other or additional relief as the Court deems just and appropriate in the circumstances.

Respectfully submitted,

SPENCER FANE LLP

By: /s/ Ryan C. Hardy
Ryan C. Hardy, 62926MO
1 N. State St., Suite 1500
Chicago, IL 60602
314-746-0047
rhardy@spencerfane.com

*Counsel to Sycamore*

**CERTIFICATE OF SERVICE**

I certify that on this 28th day of October, 2026, I filed a copy of the foregoing electronically with the Clerk of Court via ECF, which caused a copy of same to be transmitted to all parties in interest with notice of case activity generated.

/s/ Ryan C. Hardy