**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | **Case No.: 26-42401-357** |
| | ) | **Chapter 11** |
| **TEGETHOFF DEVELOPMENT, LLC, *et al.*,** | ) | |
| | ) | **(Jointly Administered)** |
| **Debtors.** | ) | |
| | ) | **Hearing Date: October 28, 2026** |
| | ) | **Hearing Time: 11:00 a.m.** |
| | ) | **Related to Doc. 222** |

**<u>ORDER AUTHORIZING DEBTOR TO PAY ADVANCES</u>**

Upon the Motion for Order Authorizing Debtor to Pay Advances (the "**Motion**")[1] of Debtors Tegethoff Development, LLC ("**TD**"), Tegethoff Development Co, LLC ("**TD Co**"), and Pearl Capital Management LLC ("**PCM**"), as debtors and debtors in possession (collectively, the "**Debtors**") for entry of an order authorizing TD to advance funds to Ellis Apartments, LP and Helen Louise Apartments, LP (the "**Projects**"); and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 1334 and 157(b); and consideration of the Motion and the requested relief comprising a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C.§§ 1408 and 1409; and TD having represented that it gave proper and sufficient notice of the hearing on the Motion under the applicable circumstances of this matter; this Court having reviewed the Motion; TD having represented that no default exists under any senior loan document in place with respect to the Projects; and this Court having held a hearing to consider the relief requested in the Motion; and all objections, if any, to the Motion have been withdrawn,

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

resolved, or overruled; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of TD, the other Debtors, and their estates and creditors; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor, it is hereby:

ORDERED that the Motion (Doc. 222) is **GRANTED** as set forth hereinafter, to wit:

A. Subject to and expressly contingent on the entry of an order by this Court authorizing TD to use its cash collateral, which order shall contain a budget approved by TD and UMB Bank for the use such cash collateral (the "**Budget**"):

1. TD is authorized, but not directed, pursuant to sections 363(b) and 105(a) of the Bankruptcy Code, to advance $66,149.41 to the Projects for the payment of their respective property insurance (the **"Insurance Policies**") pursuant to the terms set forth in the Loan Agreement and Promissory Note attached hereto as **Exhibit A** and to perform all its obligations with respect thereto. Upon advancement of the funds contemplated herein to the Projects, TD agrees to provide confirmation of the paid Insurance Policies to the objecting parties from the hearing referenced herein.

2. Nothing contained in the Motion or this Order or any payment made pursuant to the authority granted by this Order is intended to be or shall be deemed as (i) an admission as to the validity of any claim against TD, (ii) a waiver of TD or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of TD's rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (iv) an agreement or obligation to pay any claims, (v) a waiver of any claims or causes of action which may exist against any creditor or interest holder, (vi) an approval, assumption, adoption or rejection of any agreement, contract,

lease, program or policy under section 365 of the Bankruptcy Code, or (vii) a waiver of any claim, defense, or other action by any creditor or party in interest, against or related to these Projects, including, but not limited to, any claims of value or necessity of the Projects to this Case.

3. Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

4. TD is authorized to take all actions necessary or appropriate to carry out the relief granted in this Order.

5. Not later than two (2) business days after the date of the entry of this order, TD shall serve a copy of this order upon all parties entitled to receive service in the above referenced bankruptcy case and shall file a certificate of service compliant with Local Rule of Bankruptcy Procedure 9004(D) no later than 24 hours thereafter.

Dated: November 2, 2026
St. Louis, Missouri
cjs

Brian C. Walsh
United States Bankruptcy Judge

Order Prepared by:

Robert E. Eggmann, #37374MO
Samuel S. Brand #73638
CARMODY MACDONALD P.C.
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
(314) 854-8600
(314) 854-8660 – FAX
ree@carmodymacdonald.com

ATTORNEYS FOR DEBTORS

# LOAN AGREEMENT AND PROMISSORY NOTE

$66,149.41 Effective Date: October 30, 2026

**FOR VALUE RECEIVED**, the undersigned, **ELLIS APARTMENTS, LP** and **HELEN LOUISE APARTMENTS, LP,** (collectively, the "**Maker**") promises to pay, jointly and severally, to the order of **TEGETHOFF DEVELOPMENT, LLC**, as debtor-in-possession (together with any successors and/or assigns "**Holder**"), in lawful money of the United States of America in immediately available funds, the principal amount of SIXTY-SIX THOUSAND ONE HUNDRED FORTY-NINE AND 41/100 DOLLARS ($66,149.41), or so much as may be outstanding, together with interest thereon from the date hereof, in like money, at the rate or rates hereinafter specified, as follows:

1. **Loan**. On the Effective Date, Holder promises to deliver SIXTY-SIX THOUSAND ONE HUNDRED FORTY-NINE AND 41/100 Dollars ($66,149.41) to Maker as a Member Loan pursuant to the terms set forth in the respective Operating Agreements of each Maker which loan funds shall be used exclusively to pay the property insurance of such Maker.

2. **Interest**. This Promissory Note (this "**Note**") shall bear interest from time to time on the aggregate unpaid principal amount hereof at the per annum rate of seven percent (7.00%) per annum.

3. **Interest and Principal Payments; Maturity**. The outstanding principal balance and interest under this Note, if not sooner declared to be due in accordance with the provisions hereof, shall be repaid as follows:

   (a) Beginning on December 1, 2026, Maker shall make eleven (11) monthly payments of principal and interest in the amount of Five Thousand Seven Hundred Twenty-three and 69/100 Dollars ($5,723.69);

   (b) On November 1, 2027 (the "Maturity Date"), Maker shall make a final payment equal to all remaining unpaid principal, accrued and unpaid interest and other amounts due hereunder.

4. **Calculation of Interest**. For purposes of calculating the monthly installment payments due hereunder, interest shall be computed on a monthly basis using a monthly rate equal to the annual interest rate divided by twelve (12).

5. **Available Funds**. All payments under this Note shall be made in lawful money of the United States in immediately available funds.

6. **Payments Due on Saturdays, Sundays, or Legal Holidays**. If any payment of principal or interest due on this Note is payable on a day which is a Saturday, Sunday or legal holiday in the State of Missouri, then such payment shall be due on the next business day, the amount of such payment, in such case, to include all interest accrued to the date of actual payment.

7. **Late Charges**. A late charge equal to five percent (5%) of the late installment amount shall be assessed for each installment that is not received at the place designated in writing

by Holder by the date that is fourteen (14) days after the due date of such installment; provided, however, should such date fall on a Saturday, Sunday, or legal holiday in the State of Illinois, then no late charge shall be assessed until the next business day.

8. **Prepayment**. The indebtedness evidenced by this Note may be prepaid by Maker, in whole or in part, at any time without premium or penalty. All prepayments shall be applied first to accrued interest and the balance to the reduction of the principal balance, and shall not relieve Maker of making installment payments hereon when due. Amounts prepaid may not be re-borrowed.

9. **Events of Default; Acceleration**. Each of the following shall severally constitute an event of default hereunder (hereinafter referred to individually and collectively as an "**Event of Default**"), whatever the reason for such event and whether it be voluntary or involuntary or be effective by operation of law or pursuant to any judgment or order of any court or any directive, order, rule, or regulation of any government or non-government agency or entity or otherwise and shall entitle Holder to exercise its remedies hereunder:

(a) any failure by Maker to timely pay any amount due under or with respect to this Note and the failure to cure such default within fourteen (14) days of Holder giving written notice of such default to Maker; or

(b) any failure by Maker in the observance or performance of any other term, condition, obligation, covenant, promise, or agreement provided herein and the failure to cure such default within fourteen (14) days of Holder giving written notice of such default to Maker.

Upon the occurrence of any such Event of Default, at the option of Holder, and such option may be exercised at any time after an Event of Default shall have occurred and be continuing, the entire outstanding principal balance, together with all interest, late charges, costs, charges, and other amounts due under this Note shall immediately become due and payable. Upon the occurrence of an Event of Default, the Holder may exercise any rights and remedies available to it hereunder and under the other Loan Documents, in addition to all rights and remedies available to Holder at law and in equity. All of Holder's rights and remedies provided herein and the other Loan Documents, together with those granted by law and equity, are cumulative and may be exercised by Holder at any time, concurrently and/or successively.

10. **Default Rate of Interest**. After maturity, by acceleration or otherwise, this Note shall bear interest at a rate equal to four percent (4%) per annum in excess of the stated interest rate set forth in Section 1 of this Note (the "**Default Rate**"). The Holder of this Note may also recover all costs of suit and other expenses incurred in connection with efforts to collect sums due under this Note, together with reasonable attorneys' fees (including those in representation proceedings under the Bankruptcy Code), regardless of whether litigation is commenced, together with interest on any judgment obtained by Holder, at the Default Rate.

11. **Amendments; Oral Agreements, etc**. No amendment or waiver of any provision of this Note, nor consent to any departure by Maker therefrom, shall in any event be effective unless the same shall be in writing and separately acknowledged in writing by Holder, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose

for which given. Oral agreements or commitments to lend money, extend credit, forbear from exercising remedies, renew or extend repayment terms, or otherwise modify the terms of this Note shall not be enforceable.

12. **Severability**. If any provision of this Note is deemed to be invalid by reason of the operation of law, or by reason of the interpretation placed thereon by any administrative agency or any court, the remaining provisions hereof shall not be affected thereby and shall remain in full force and effect.

13. **Governing Law and Venue**. This Note shall be governed by and construed in accordance with the laws of the State of Missouri, exclusive of its conflicts of laws provisions. Maker and Holder, consent, acknowledge, and agree that any action to enforce this Note shall be brought in the Circuit Court of St. Louis County, State of Missouri or the Eastern District of Missouri Federal Court.

14. **Counterparts**. This Note may be executed in one or more counterparts, each of which shall be deemed to be an original, and all of which shall constitute together but one and the same agreement. Delivery of an executed counterpart of a signature page to this Note by facsimile, email, or in electronic ("pdf" or "tif" ) format shall be effective as delivery of a manually executed counterpart of this Note. Any party so delivering this Note by facsimile, email, or other electronic transmission shall promptly deliver a manually executed counterpart, provided that any failure to do so shall not affect the validity of the counterpart delivered by facsimile or electronic transmission.

15. **Carmody MacDonald P.C.** Each person signing this Note (i) understands that this Note contains legally binding provisions, (ii) has had the opportunity to consult with a lawyer, and (iii) has either consulted a lawyer or consciously decided not to consult a lawyer. Each person signing this Note expressly acknowledges and agrees to the following: (i) Carmody MacDonald P.C. is representing Holder in this matter; and (ii) Carmody MacDonald P.C. is not representing any other person in this matter.

16. **Notice.** All notices and other communications required or permitted hereunder shall be in writing and shall be sent by (i) overnight courier specifying next day delivery with written verification of receipt or registered or (ii) registered or certified mail, return receipt requested, postage prepaid, addressed in each case to the party entitled thereto at the address for notices listed for the appropriate party set forth in their respective Operating Agreement or at such other address as one party may furnish to the other in writing. Notice shall be deemed effective the day after mailing if delivered by overnight courier or three days after mailing if by registered or certified mail.

17. **WAIVER OF JURY TRIAL**. **EACH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL ACTION, PROCEEDING, CAUSE OF ACTION, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, INCLUDING ANY EXHIBITS, SCHEDULES, AND APPENDICES ATTACHED TO THIS AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED HEREBY. EACH PARTY CERTIFIES**

**AND ACKNOWLEDGES THAT (A) NO REPRESENTATIVE OF THE OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE OTHER PARTY WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF A LEGAL ACTION, (B) IT HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER, (C) IT MAKES THIS WAIVER KNOWINGLY AND VOLUNTARILY, AND (D) IT HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION. MAKER AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST THE HOLDER ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.**

*Remainder of page intentionally left blank.*

**IN WITNESS WHEREOF**, Maker and Holder have executed and delivered this Note as of the day and year set forth below and effective as of the day and year first above written.

**MAKER:**

**ELLIS APARTMENTS, LP**

______________________________
____________, ________________

______________________________
____________, ________________

**HELEN LOUISE APARTMENTS, LP**

______________________________
____________, ________________

______________________________
____________, ________________

**HOLDER:**

**TEGETHOFF DEVELOPMENT, LLC**

______________________________
Jeffrey Tegethoff, Sole Member and Manager